It is moved to dismiss the bill for want of equity. For the purposes of this motion, the allegations of the plaintiff are taken to be true, and no other part of the pleadings is looked into. With this concession, it is insisted by the defendants that the plaintiff is not entitled to the interference of this Court.
(291) On application for equitable relief, it is not sufficient to show that injustice has been done. It must also be shown that the Court will be warranted in exercising its power. Equity does not interfere, on the ground that an unconscientious verdict has been obtained at law, unless it were not competent to the complaining party to make his defense in a court of law. Bateman v. Wilcox, 1 Scho. and Lef., 201, 204; Jones v.Jones, 4 N.C. 547. As the allegations of the bill are taken to be true, the transaction may be viewed as if the money due on the bond had been paid by Dickinson to Smith on 15 August, 1785, however improbable it may be that the payment was then made. The bond had not become payable; it was then in possession of Nailing; no notice of payment was given to him; the surrender of the bond not required by the obligor, the receipt not setting forth what had been received in *Page 155 
payment, but simply stating, "Received in full satisfaction of the bond," etc. These circumstances are well calculated to excite suspicion that payment had not been made, and that some contrivance was designed to deprive Nailing of the security on which he relied. But these presumptions are all waived. It is now conceded that the bond had been paid; and it is clearly unconscientious to enforce payment a second time for the same debt. Can this Court, under these circumstances, interpose to prevent this act of injustice? Relief cannot be extended if it were competent to the plaintiff to make his defense at law.
The action was brought on the bond, in the name of the obligee, against the plaintiff as executor de son tort of the obligor. If payment had been made on 15 August, 1785, as is alleged in the bill, that defense would have availed the plaintiff at law. The suit was brought on a sealed instrument; payment at the day might have been pleaded, and the receipt, although without seal, could have been given in evidence to support that plea. This principle has been sanctioned by the uniform practice of our courts of law. McDowell v. Tate, 12 (292) N.C. 249. I do not know that the correctness of this practice has ever been questioned in our courts, nor was it doubted in the case now under consideration, so far as we can discover form the bill. The right of the obligor to prove by parol the performance of the conditions and payment at the day, and thus to discharge himself from the obligations of his deed, has not been denied. Tender and refusal are facts which can only be proved by parol; and when made on the day, if the money be brought into court, and the plea of tender and refusal be supported by parol proof, it will defeat the action of the obligee. If the obligation be not for the payment of money, but for the performance of some collateral act, requiring the concurrence of the obligee, and there be an offer by the obligor to perform, and the performance be prevented by the obligee, which are facts only to be proved by parol, such proof will discharge the obligor, although bound by deed. Mitchell v. Patillo, 9 N.C. 40. It has also been understood that the statute of 4 Anne, ch. 16, sec. 12, which allows the obligor, when sued in debt on a single bill, to plead payment in bar, is in force in this State. This has been the uniform understanding of the profession, and it has governed their practice. But if the old principle of the common law be contended for, that when the action is brought on a deed, it can only be avoided by matter of as high a nature, as by an acquittance under seal, and that the statute of 4 Anne is not in force here, still it is insisted complete defense could have been made at law, either on the plea of payment at the day, condition performed, or accord and satisfaction. The bill does not state the character of the specialty, but speaks of it as the bond of Dickinson; *Page 156 
from which it is to be inferred that it was a penal bond, conditioned for the payment of £ 132 10s. six months after date. Were it a penal bond, the plea of "payment at the day" would have been good at (293) common law, for it is the performance of the condition. St. Germain's Doctor and Stud., 107. Payment before the day could be given in evidence, and the money would be considered as a deposit in the hands of the obligee till the day of payment arrived, when it would, in legal contemplation, be applied. 7 Mod., 231. The plea of condition performed would have answered the like purpose. Anonymous, Coke Eliz., 46. Had the obligor paid money or other equivalent when the receipt was given, and it had been accepted by the obligee in full satisfaction of the condition of the bond, then the obligor would be protected under the plea of "accord and satisfaction." That payment was made and accepted in full satisfaction is averred in the bill. As the condition was performed before the day, if less than the sum due were paid and accepted in full satisfaction, it would be a discharge; because part of the debt before the day may be more beneficial to the obligee than the whole at the day.Pinnell's case, 5 Rep., 117, a.
It is not alleged in the bill that the plaintiff did not make defense at law. He avers that he made all the defense in his power, and that he gave the original receipt in evidence to show that the bond had been paid by Dickinson. It is not pretended by the plaintiff that he was met by any technical difficulties which prevented an investigation of the case on its merits.
Equity ought not to interfere when adequate relief might have been had at law. Were the verdict improper, a new trial could have been granted by the court of law. This appears to be an application to a court of equity to grant a new trial in a cause which had been tried in a court of law, that had ample power to grant full relief. Courts of equity are not instituted to correct the errors or revise the judgments of courts of law. Fentress v. Robins, 4 N.C. 610. This is an attempt to obtain two trials, in different forums, of the same question; first (294) taking a chance at law, and then appealing to equity. There must be some end to litigation. If injustice had been done the plaintiff at law, he could have appealed, or have procured a certiorari, and had the judgment of the court below revised by a court of superior jurisdiction, possessing common-law powers and constituted for the purpose of correcting such errors. Gatlin v. Kilpatrick, 4 N.C. 147.
The act of the General Assembly organizing a court of supreme jurisdiction was passed in 1799; and a court possessing such powers has been since continued. The plaintiff could have had the alleged errors revised by an appeal to the common-law side of this Court, without invoking *Page 157 
the exercise of chancery powers. Relief is not given in equity because there has been an omission to make defense at law. 14 Ves., 31; 1 Johns. Ch., 51.
But there has been no such omission. The defense was made in a court of competent jurisdiction, and was overruled. This circumstance will not justify the interference of a court of equity. 2 Johns. Ch., 557.
The plaintiff alleges that he seeks relief in this Court on the ground of newly discovered evidence; that he did not know, until after the trial at law, that the bond had been placed in Nailing's hands only to indemnify him for his liability as surety of the obligee, and was endorsed to him without any other consideration. It is to be inferred from this allegation that the obligor knew, at the time he procured the receipt from the obligee, that Nailing held the bond. Ignorance of this fact is not pretended, and certainly the obligee not having possession of the bond was sufficient to put the obligor on inquiry and to prevent his paying it, until he could obtain its surrender. It is not intimated that the obligee concealed from the obligor, at the time of the alleged payment, that Nailing had possession of the bond; and it must be inferred from the circumstances that the obligor well knew, or had very good (295) reason to believe, Nailing claimed some interest in the bond. Why, then, did the obligor make payment to the obligee? Were it with any design to defeat Nailing's claim, the plaintiff, who represents the obligor, comes with ill grace into this Court. It is not alleged that any artifices were resorted to, either by Nailing or the obligee, to deceive the obligor. To view the transaction most charitably, it was an act of gross negligence, or extreme folly, on the part of the obligor, which gives him no claim to the interposition of this Court.
The plaintiff sets forth no reason why he could not have discovered this new matter, by the exercise of ordinary diligence, as well before as after the trial at law. But the discovery of this evidence, and its exhibition on the trial, could have been no defense for the plaintiff. The jury, by giving a verdict for the obligee, must have come to the conclusion that payment had not been made, and that there had been no accord or satisfaction; which conclusion must have been founded on the belief that the receipt was spurious, and not the act of the obligee. The plaintiff could have gained nothing by showing that the obligee had the beneficial as well as the legal interest in the bond.
The endorsement of the bond to Nailing was only the assignment of a chose in action, which vested in him no legal rights, and his interest would not be noticed in a court of law. The assignment was made in February, 1785. The act making bonds for the payment of money *Page 158 
negotiable in this State was not passed until December, 1786. A bond, not negotiable at the time of its execution, does not become so by subsequent occurrences. Tindall v. Johnston, 2 N.C. 372; Campbell v.Mumford, 2 N.C. 398. The act of 1786 had no retrospective operation; it did not embrace bonds made before its enactment. Suits on such bonds must be brought in the name of the obligee; the assignment could not clothe the assignee with any legal rights. Wilkinson(296) v. Wright, 1 N.C. 509. Our courts of law only consider legal rights. Jones v. Blackledge, 4 N.C. 342.
The action was brought in the name of the obligee; the legal right was clearly in him. On the plea that the bond had been paid at the day, or on the plea of accord and satisfaction, made and accepted by the obligee, the question could not arise in a court of law, whether the assignment had been made with or without consideration. If any question of fraud had incidentally arisen on the trial, that court was competent to its decision. It was not necessary to the defense of the plaintiff to show that the bond had been assigned without consideration. That court would not inquire who was beneficially interested in the suit, but would look only to the legal rights of the plaintiff in the action. It is said the court protected the assignee on the ground that the assignment was evidence of its having been made for valuable consideration. If the court of law, which tried the cause, inquired into the equitable rights of the assignee, and deemed such an inquiry material to the issues joined, it is believed to be a mistake, and it carried the court "out of the record." And such error gives the plaintiff no title to the interference of a court of equity. He could have moved for a new trial, or he could have had the error corrected by the adjudication of a court of appellate jurisdiction, possessing common-law powers. No court aspires to infallibility or claims exemption from error. Human institutions partake of human imperfection. Perfect justice is not to be expected from imperfect tribunals.
The bill must be dismissed, each party paying his own costs.