W. W. ROLLINS and others v. R. M. HENRY.

*Evidence—Fraud—Construction of Contract—Practice—Judgment against Sureties in Action to Recover Land.*

1. Where on the trial below, a transcript of proceedings instituted to set up a last will was admitted in evidence on behalf of the plaintiff, the purpose for which the evidence was offered being unexplained and its materiality and pertinency to the issues not being seen: *Held,* not to be error, even if irregularities appeared in the proceedings or if the court had no jurisdiction, as the defendant's case was not prejudiced by the evidence.

2. The admission in evidence of notes upon which a judgment had been rendered, and parol proof to identify the notes as those upon which the judgment was rendered is not error.

3. A judgment obtained by an executor cannot be collaterally impeached by evidence that the testator was not a citizen of the county where the will was probated.

4. In an action to recover land where plaintiff sought to invalidate a decree of a court of equity for fraud, it is competent to prove the declarations of one of the parties to the equity suit, not a party to the present action.

5. In such action it is competent to prove by the plaintiff a conversation between plaintiff and defendant (a party to the equity suit) which took place pending the equity suit.

ROLLINS *v.* HENRY.

6. Two brothers executed an agreement " that property, real or personal, that may be acquired from either of their parents, either in the name of one or both of them, shall be held jointly between them, and if the conveyance is made in the name of one, he is to convey an equal interest in common to the other at a convenient, suitable and reasonable, time ": *Held*, that the subject matter of the agreement was confined to property acquired by gift, will or inheritance.

7. Where the court below held that a decree, rendered in a suit based on said agreement concerning property *purchased* by one of the brothers from their father, was fraudulent on its face, this court, while not fully assenting to the ruling, will not grant a new trial because the question of fraud was left as a fact to be found by the jury.

8. In an action to recover land where the plaintiffs sought to invalidate a decree of a court of equity for fraud, it appeared that the plaintiffs had obtained an injunction restraining the defendant (who was plaintiff in the equity suit) from proceeding under the decree and had applied to be made parties to said suit for the purpose of moving to set aside said decree for fraud, and that at the hearing the following order had been entered by consent, " ordered, adjudged and decreed that the restraining order heretofore made in this action be vacated and the injunction dissolved and the petition dismissed:" *Held*, that the question of fraud was not *res adjudicata* and that plaintiffs were not precluded from reopening the controversy.

9. Upon judgment being rendered against defendant in an action to recover land, it is not error to enter a summary judgment against the sureties on his bond.

(*Lassiter* v. *Davis*, 64 N. C., 498; *Bond* v. *McNider*, 3 Ired , 440; *Carter* v. *Wilson*, 2 Dev. & Bat., 276; *Plummer* v. *Wheeler*, Busb., 472; *Jenkins* v. *Johnston*, 4 Jones Eq., 149; *Smith* v. *Newbern*. 73 N. C., 303; *Swepson* v. *Harvey*, 69 N. C., 387, cited and approved.)

CIVIL ACTION to recover land tried at Spring Term, 1880, of BUNCOMBE Superior Court, before *Schenck, J.*

The defendant appealed from the judgment below.

*Messrs. Merrimon & Fuller* and *J. H. Merrimon*, for plaintiff.
*Messrs. Battle & Mordecai, C. A. Moore* and *F. A. Sondley*, for defendants.

SMITH, C. J. This cause has been several times before the court, and last, on the defendant's appeal for errors assigned

ROLLINS *v.* HENRY.

in its conduct at January term, 1878. The facts now set out in the record, essentially the same although differing in some particulars, so far as they are deemed conducive to a proper understanding of the exceptions, may be thus summarily stated :

On the 6th of September, 1850, the brothers, Robert M. and William L. Henry, in order to secure to each an equal share of the property which either might derive from father and mother, entered into a mutual agreement whereby it is provided, "that any property real or personal that may be acquired from either of their parents, either in the name of one or both of them, shall be held jointly between them, and if the conveyance is made in the name of one, he is to convey an equal interest in common to the other at a convenient, suitable and reasonable time; the said ........ are to answer equally for all improvements put on any of their joint property, and if one or the other shall superintend the improvements of property, he shall be paid for it out of the property, making due allowance, &c., or otherwise paid." By its terms the agreement was to be in force "as long as either of the parties to it shall wish it to continue, or until they shall ........ its being settled between them, at which time their joint property shall be divided between them."

On the 9th of December, 1859, Robert Henry, their father, of the age of ninety-seven years, and then owning "the Sulphur Spring tract of land," now in dispute, conveyed the same by deed to the said William L. Henry, reciting as the consideration therefor the payment of $1,500 to one Peter Mostelly, of $100 to himself, and the rendering of divers services to himself and family, subject to six notes amounting in all to $10,000 and payable in equal annual instalments with interest from the first day of January, 1860.

To enforce the specific performance of the agreement, suit was instituted in the court of equity of Buncombe in 1863,

by R. M. against W. L. Henry.  The cause after many continuances was transferred to the superior court of Buncombe, and at spring term, 1869, by consent an order was entered referring "the matter in dispute in all its lawful and equitable bearings to J. G. Martin and W. D. Rankin to determine the same," according to the spirit of the paper writing specified in the bill and alleged to be executed by the said parties when established, and making the award a rule of court.  At fall term, 1872, the referees made their report after hearing and considering the evidence adduced by the contestants, and award as follows:

1. The articles of agreement dated September 6th, 1850, are genuine and binding.

2. The agreement is applicable to the Sulphur Springs property after paying therefrom the just claims attaching thereto at the death of Robert Henry, and that subject thereto and to the costs of the reference the said property shall be equally divided between the parties.

To the report, exceptions were filed by both, and at spring term, 1873, by consent the cause was ordered to be removed to the county of Rutherford, subsequently changed by the parties to Graham county, and at spring term, 1874, a consent decree entered finally disposing of the controversy, whereby the complainant recovered the Sulphur Springs and various other tracts in fee, and was declared entitled to process to put him into possession, and a deed of conveyance from said William L., and the latter exonerated from all further obligations under the said agreement.  Pursuant to this judgment, title to the several tracts was (by deed January 30th, 1876,) duly conveyed to said William L. by the said Robert M.  This constitutes the defendant's claim and is the source of his title in the land.

The plaintiffs derive their title also under the said Robert M. as follows: Samuel B. Gudger, executor of Robert Henry, deceased, on the 8th of February, 1867, brought his action

against William L. in Buncombe superior court of law, and the same having been transferred to the superior court and then removed to Haywood county, at spring term, 1872, recovered judgment in the superior court of the last mentioned county upon the specialties filed for the sum $6,226.26 with interest on $3,569.14 principal money, and his costs, and this judgment was docketed in Buncombe county on the 25th of July following. On this judgment execution issued from the court in which it was rendered to the sheriff of Buncombe on July 3d, 1872, under which the Sulphur Springs land was sold to the plaintiffs and J. L. Henry on September 28th thereafter, for the sum of $6,475, and duly conveyed by the sheriff's deed of the same date to the said purchasers.

The plaintiffs also claimed title under a previous sale by virtue of several other executions issued on judgments against said William L. and the same sheriff's deed pursuant thereto, but as the executions were not produced and no sufficient proof of their loss offered to admit of secondary evidence of their existence and contents, this alleged source of title need not be considered.

As the plaintiffs claim under the execution exhibited, and the sheriff's deed last executed is posterior to the lien created by the filing of the bill in equity by the defendant, Robert M., the efficacy of the final decree in which suit, by relation to its commencement, is to transfer the estate in the land, then vested in William L., to the present defendant, and to remove all liens and encumbrances, intermediate attaching, even when consummated by a sale, it is obvious that unless the decree can be successfully impeached for fraud, and it is open to such evidence on the part of creditors, it must prevail over the plaintiffs' title and defeat their recovery. This the plaintiffs proposed to do; and upon issues submitted to the jury and the evidence produced in relation thereto, they find that, first, the plaintiffs are the owners of

the land and entitled to possession; and secondly, they are entitled to recover damages at the rate of $600 per annum for the four years admitted to be the period of the defendant's occupation of the premises. During the trial various exceptions were taken for the defendant, the validity of which we are required to examine:

Exc. 1. The plaintiffs offered in evidence a transcript of proceedings instituted in the superior court of Buncombe to set up the proved but last will of Robert Henry and the final decree therein establishing its contents, to which the defendant was a party. The defendant objected to the transcript for want of jurisdiction in the court and for irregularity in the proceeding, but it was admitted. The purpose for which the evidence was offered is unexplained, nor are its materiality and pertinency to the issues seen. If the object was to show the actual representative character of the suing executor, Gudger, and sustain the judgment recovered by him, the evidence was wholly needless, for the judgment is proof of itself and requires no support to validate the execution issuing thereon and the sale under it. The admission of the transcript, whether irregularities appear in the proceeding or there is a want of jurisdiction in the court to entertain it, could in no manner prejudice the defendant's case, and furnishes no ground of exception.

Exc. 2. The plaintiffs were allowed after objection to introduce four notes executed by W. Henry to Robert Henry his father, on December 9th, 1859, payable at different times, and the last becoming due January 1st, 1864, each in the sum of $1666.66, and to prove by the executor that the judgment was rendered upon them. If the record of the judgment identifies the notes as the subject matter of the suit set out in the writ and declaration supposed to follow it, under the former practice, the production of the papers and the proof were useless, and if the cause of action is not sufficiently identified, the evidence was clearly competent.

But in neither case is the proof important for any other purpose than to show when the cause of action accrued and the recognition in the deed of the deceased of the indebtedness as a charge upon the land.   This exception for similar reasons must also be overruled.

Exc. 3. The defendant was not permitted to prove by the witness that the deceased was a citizen and resident of Clay and not of Buncombe county, and that in consequence the probate was a nullity and the witness was not a legal and qualified executor.   This objection is met and disposed of in what has already been said, and further comment is needless.   The judgment in Clay cannot be collaterally impeached, and must remain and be conclusive, until reversed or modified by the court in which it was rendered.

Exc. 4. This exception will be considered last.

Exc. 5. The plaintiffs in support of their allegation of collusion and fraud between the parties in entering the decree in the equity suit, proposed to show from declarations of William L., made just previous thereto, that himself and brother were going to court, that there was an agreement between them that Robert M. was to have half the profits of the Sulphur Springs until the Rollins suit was decided, and half the land if Robert M. gained it.   This evidence was opposed on the ground that to invalidate the decree both parties must concur in the attempted fraud, and the separate intention of one, not participated in by the other, was insufficient, nor was the declaration competent against the defendant, Robert M.   The proposition of law contained in the objection is correct and is supported by the case of *Lassiter* v. *Davis*, 64 N. C., 498, and the other references in the elaborate and well considered brief of the defendant's counsel.   But proof of participation in the meditated fraud can usually only be made by showing the separate intent of each, of which their respective avowals would be deemed most satisfactory.   The decree itself, the act of both, the

plaintiffs insist, contains intrinsic evidence of the fraudu-
lent intent, and the declarations of the then owner of the
land of such intent are used in corroboration of the other.
The objection lies not to the *competency* of the evidence so
much as to its sufficiency to establish the vitiating fraud,
and it does not appear that the jury were not correctly in-
formed of the force of the evidence and what was necessary
to be proved for a successful impeachment of the *bona fides* of
the transaction.

Exc. 6. The plaintiffs were allowed to prove a conversation
between the plaintiff, Pinkney Rollins, and Robert M.,
wherein the latter urged the witness, Pinkney, to buy the
Sulphur Springs land and declared that said Robert M. had
no claim upon it; that on behalf of the plaintiffs, he then
undertook to defend the suit against William L., and while
preparing to do so the consent decree was entered without
the knowledge of either of them. The objections to the dec-
larations are: First, That they proceed from a party
then hostile to the defendant, and were made before the con-
veyance under the decree; and because, Secondly, It was
the province of the jury, not of the court, to determine
where the fraud, if any, was conceived. What has been
said in regard to the preceding exception applies with equal
force to this. We do not understand the judge as with-
drawing from the jury and passing himself upon the effect
of this testimony. He allows it to be heard and acted upon
by the jury, and its competency and relevancy he must of
necessity determine before it can be heard. The evidence
in connection with other facts tended strongly to indicate a
fraudulent intent in the party by whom the subsequent con-
veyance was to be made, brought about by inducements
afterwards operating on his mind, and assented to by the
other, the defendant, in accepting such conveyance. In
cases of fraud it has been repeatedly held that declarations
of the intent of the grantor made just before his deed was

executed, accompany and affect the assigned estate, and may be shown by a creditor to impeach its validity.

Exc. 7. The court instructed the jury that the property " *acquired* from either of their parents," the subject matter of the agreement of September 6th, 1850, was confined to such as either might obtain " by gift, will or inheritance from their father or mother, and did not embrace property purchased *bona fide* and for full value from their father or mother," and directed the jury to enquire how the land in dispute has been obtained.   We concur in this construction, of the instrument, limiting its operation to such property or to such part of the value of it as is a gift or gratuity to the recipient.   The will of the testator confirms his deed to, his son William L. conveying the Sulphur Springs and adjacent land, thus apparently recognizing the inadequacy of the pecuniary consideration therein stated and the excess of its real value as a gratuity to him, the facts of which were properly left to the consideration of the jury.

Exc. 8. The court reserving the point until after verdict, then ruled that the decree was upon its face fraudulent because it included property which the bill showed the complainant was not entitled to.   The ruling seems to be countenanced by what is said in the opinion of RODMAN, J., in the former appeal.   " A decree by consent binds the parties and their privies in estate, but it is open to these last to impeach it on the ground that it was fraudulent to their injury ; and in the present case it would be fraudulent as to the plaintiffs, if it gave to the defendant, R. M. Henry, any greater estate in the property than he was equitably entitled to, and than would have been given him by the court on a hearing of the action."   Without giving full assent to the legal proposition thus laid down, since it admits no qualification even in case of error in judgment, and in substance requires a consent decree in order to its validity to conform to a construction put upon the contract in another and dis-

37

tinct form, the ruling of the court was not required on the point, because the question of fraud was left as a fact to be found by the jury, and their verdict finds there was fraud in the transaction.

Exc. 4. The defendants preliminarily to the introduction of any evidence of fraud in the decree and to estop the plaintiffs from going into that enquiry, exhibited a transcript of the record of proceedings, instituted September 14th, 1874, in the superior court of Graham by the plaintiffs against the said R. M. Henry and W. L. Henry to impeach the said decree as having been obtained by collusion and fraud and with a special intent to defraud the complainants, and praying for an injunction to restrain the said Robert M. from proceeding under the decree to get possession of the land, and therein giving notice of a proposed motion to be allowed to become parties to the suit, to the end that the decree may be set aside and reversed. The order for the injunction was made and the defendant, Robert M., answered the complaint, denying the imputed fraud and collusion and averring that the decree was in pursuance of a compromise of conflicting claims of large amounts, and the consideration received by said William L. was a full exoneration from liabilities to the amount of many thousand dollars. The plaintiffs amended their complaint, setting out the particular circumstances attending the suit in equity, and the evidence of its fraudulent character and object developed during its progress and in its management, and charging a parol agreement between the parties that one-half of the land recovered should enure to the benefit of the children of William L., and a conveyance made thereof, and praying that the decree be declared void and the matter of the suit re-opened. To the amended complaint the defendant in his amended answer opposes a positive denial of the allegations of fraud,—explaining the nature and grounds of the proceeding in equity,—admitting the reference to the

arbitrators and the award declaring valid the original agreement and giving the defendant Robert M. one-half of the Sulphur Springs property, after discharging the liens for the remaining unpaid purchase money—the filing exceptions among which was the failure of the referees to take into account the other property claimed to be within the operation of the agreement, the allowance of which would have entitled the plaintiff to the whole of the property. At the hearing of the cause on December 23rd, 1874, and on agreements of counsel, His Honor ordered, adjudged and decreed that "the restraining order heretofore made in this action and petition be vacated and the injunction dissolved and the petition dismissed" at the cost of the petitioners. Upon this evidence the defendant contended that the question of fraud in the decree had become *res adjudicata* and the plaintiffs were precluded from re-opening the controversy in regard thereto. The court overruled the objection and admitted the evidence.

It does not appear that the merits of the dismissed proceeding were considered and passed on, and the mere dismissal of the case is not in our opinion followed by the consequences supposed. Such an entry has not that effect when applied to an action at law under the former practice, but is held to operate as a discontinuance only. The entry "dismissed at the defendant's costs does not show," says DANIEL, J., in *Bond* v. *McNider*, 3 Ired., 440, "that the merits of the cause passed *in rem judicatam*," nor does the order for payment of costs furnish "*prima facie* evidence to be left to the jury of an accord and satisfaction." See also *Carter* v. *Wilson*, 2 Dev. & Bat., 276; *Plummer* v. *Wheeler*, Busb., 472.

A different effect is ascribed to the unqualified dismissal of a suit in equity upon the hearing, and such decree is held to be a bar to another. This seems to follow from the practice in that court, when the decision is adverse to the

claim for relief, as a final adjudication to dismiss the bill. *Jenkins* v. *Johnston*, 4 Jones Eq., 149.

The judgment in this proceeding was in support of a motion to vacate a restraining order previously granted and to dissolve the injunction, not upon an examination of the merits of the case presented, or an inquiry into the alleged fraudulent and impeached decree, but, as we think may be inferred from the record, that the case made in the pleadings did not authorize the intervention of the plaintiffs in a proceeding to which they were not parties, to set aside a decree not binding on them, and open to proof of its fraudulent character. *Smith* v. *Newbern*, 73 N. C., 303. The judgment of dismissal, after the rescission of the preliminary order, ought to have no other force than a refusal to take jurisdiction, by this method of procedure, and pass upon the validity of the decree. The case does not strictly fall within the rule prevailing in equity by which, when a cause is finally heard upon its merits and dismissed, the decree is a bar to another suit. We may further suggest now that there is but one form of action admitting of but one construction of the entry of dismissal, whether that adopted in the courts of law is not more consonant with the presumed intent of the parties and better calculated to subserve the ends of justice, and protect the rights of litigants. The objection must be overruled. See *Swepson* v. *Harvey*, 69 N. C., 387.

The last and remaining exception is to the entering up a summary judgment against the sureties to the bonds given by the several defendants before being allowed to answer and defend the action, under the provisions of the act of March, 1870. Bat. Rev., ch. 17, § 382, a. b. c.

While there is no direct authority given to enter up such judgment, it is manifest such was the intent of the enactment, and for these reasons : First, the bond or undertaking is required of the defendant before he is permitted to plead,

answer or demur, just as the plaintiff is required to secure the defendant's costs upon bringing his action. They are both placed in this respect upon an equal footing. Secondly, the condition of the plaintiff's undertaking is to "pay the defendant all such costs as the defendant shall recover of him in the action," and that of the defendant's bond "to pay to the plaintiff all such costs and damages as the said plaintiff may recover in the action." The only difference is the additional word "damages" in the latter case, growing out of the different relations of the parties to the cause. Thirdly, the liability in each case is determined by the liability of the respective parties to the suit, and hence nothing is disputable by the sureties except a denial of their execution of the undertaking or bond, requiring a jury. For these reasons we think a summary judgment may be recovered as well upon the defendant's bond as upon the plaintiff's undertaking, and the same remedy was intended in both cases, as soon as the amount of the liability of the principal in either case is definitely ascertained and adjudged. The implication of such intent is scarcely less forcibly than if expressed in direct words.

We have thus carefully reviewed the points presented in the appeal in this protracted controversy, which we suppose must terminate in the present decision. We have not adverted to any equity growing out of the agreement, and as suggested by the court heretofore, because we find no amendment setting up an equitable defence, and the case in this regard is the same as that before presented.

There is no error and the judgment must be affimed.

No error.                                                    Affirmed.