W. L. McCOY v. J. B. JUSTICE, Administrator of the Estate of
PERRY HYATT, Deceased, et al.

(Filed 22 October, 1930.)

**1. Judgments K c—Judgment may be set aside for extrinsic fraud, but not for intrinsic fraud affecting matters in issue.**

Equity will not ordinarily set aside a judgment for intrinsic fraud in the trial of the action, such as false swearing, conspiracy to defraud, etc., since such matters relate to the issues joined in the trial and should have been met in the trial by the use of such diligence as is required of a defendant, but a judgment may be set aside only for extrinsic fraud or fraud relating to matters which are not in issue and which prevent the defendant from presenting his defense and which prevent a real contest in the trial in which the judgment sought to be vacated was rendered.

**2. Same—In this case evidence was to intrinsic fraud for which equity will not set aside a judgment.**

Where in a suit to set aside a judgment obtained against the defendant for criminal conversation and the alienation of the affections of the plaintiff's wife, the allegation and proof are that the husband and wife and others conspired together to conceal the fact that the husband and wife continued to live together and that he continued to support her until the action at law had terminated contrary to the evidence in that case, with other evidence of false swearing: *Held*, the allegations and evidence are to intrinsic fraud for which equity will not set aside a judgment, and judgment as of nonsuit was properly entered.

**3. Same—In a suit to set aside a judgment the exclusion of former pleadings of the parties tending to show false swearing is immaterial.**

While pleadings in an action may be competent in proper instances upon another trial between the same parties to contradict the evidence introduced in the later action, its exclusion is immaterial and not reversible error when the later suit is in equity to set aside the judgment in the former action, and the pleadings are to matters constituting intrinsic fraud for which equity will not grant the relief demanded.

**4. Same—In a suit to set aside a judgment exclusion of evidence tending to show intrinsic fraud held harmless.**

Although the declarations of one of the parties to an unlawful conspiracy are ordinarily admissible against the other conspirators when made in furtherance of the common scheme, in a suit to set aside a judgment, the exclusion of a part of a deposition relating to a conspiracy between the former plaintiff and his wife to obtain money by bringing suit for alienation of the affections of the wife, is to an agreement to commit perjury and is to intrinsic fraud for which equity will not set aside a judgment, and *held further*, its exclusion was harmless, the substance of the excluded testimony being brought out on cross-examination.

**5. Same—Newly discovered evidence will not be considered in suit to set aside a judgment for fraud.**

Newly discovered evidence ,is a ground for a motion for a new trial in an action at law, and will not be considered in a suit in equity to set aside a judgment for fraud; the newly discovered evidence being intrinsic to the issues involved in the action at law.

**6. Evidence D e — Testimony of communications between husband and wife held properly excluded in this case.**

In a suit in equity to set aside a judgment rendered in an action at law for fraud, letters from the plaintiff in the former action to his wife respecting fraud in that action are properly excluded when the letters are obtained by a third party with the consent of the wife, the letters being privileged communications, C. S., 1801, and inadmissible against either the husband or the wife.

APPEAL by plaintiff from *Harwood, Special Judge,* at October Special Term, 1929, of MACON. Affirmed.

The suit was brought to set aside and declare invalid on the ground of fraud and collusion a judgment recovered against the plaintiff by Perry Hyatt, deceased.

The plaintiff is a resident of Macon County. The defendants are Perry Hyatt's administrator, his widow, his mother, his brothers and sisters, and the sheriff of Macon County.

Perry Hyatt and Annie Hyatt were husband and wife. They were married in 1912. On 12 August, 1925, Perry Hyatt, then in the employ of W. L. McCoy, plaintiff in this action, suffered personal injury ,which resulted in partial paralysis. He died 24 March, 1927. No child was born of the marriage. Annie Hyatt became pregnant in December, 1925, and gave birth to a child in August, 1926. In June, 1926, her husband discovered her condition and she immediately left his home. On 28 June, 1926, Perry Hyatt instituted an action against W. L. McCoy to recover damages for criminal conversation with Annie Hyatt, and the alienation of her affections. He was given a judgment which was affirmed on appeal to this Court. *Hyatt v. McCoy,* 194 N. C., 760. Execution was issued and the plaintiff brought suit to set aside the judgment on the grounds above stated.

A summary of the pleadings is necessary to an understanding of the exceptions. The plaintiff alleges that Perry Hyatt and his wife, aided by the defendants, other than Caroline Hyatt and C. L. Ingram, formed a conspiracy to cheat and defraud the plaintiff, and for this purpose caused an action to be brought against him in the name of Perry Hyatt for debauching Annie Hyatt and alienating her affections; that Perry Hyatt recovered a judgment; that an action was brought by Annie, whose complaint was demurred to and held to be insufficient; that the plaintiff paid Perry and his wife $2,000; that in pursuance of

their conspiracy these two agreed to separate and live apart until Perry's suit was finally disposed of; that there was a pretended, but not an actual, separation between them; that Perry provided for his wife money, board, and clothing; that her affections were never alienated; that some of the defendants kept away from the trial three or four witnesses who were material for the defense and made arrangements with jurors to render a verdict favorable to the plaintiff in that action; that the plaintiff (McCoy) was diligent in his defense, but did not prevail because of the alleged fraud and conspiracy; that he first learned of the fraud after the judgment of the Superior Court had been affirmed on appeal; that the allegation that Perry and his wife lived happily together was false, their marital relations having previously been disturbed by her infidelity; that two of the defendants intimidated the plaintiff's witnesses; that the plaintiff received information when Annie instituted a proceeding against the administrator for a settlement of the estate; that the alleged agreement between her and her husband was a sham; and that the allegations in Perry's complaint, as well as his testimony at the trial, were fabricated and untrue.

The answers put in issue all the material allegations relating to the alleged conspiracy, fraud, deceit, interfering with jurors and intimidating witnesses and other allegations, the establishment of which is necessary to enable the plaintiff to recover. Annie Hyatt alleges in her answer that she does not own or claim any interest in the estate of her husband.

At the close of the plaintiff's evidence the defendants moved to dismiss the action as in case of nonsuit. The motion was allowed, and the plaintiff excepted and appealed upon assignments of error referred to in the opinion.

*A. Hall Johnston, Edwards & Leatherwood and Moody & Moody for plaintiff.*

*Bryson & Bryson and Geo. H. Patton for defendant.*

Adams, J. This is a suit in equity brought by the plaintiff to restrain the issuance of an execution and to set aside a judgment recovered against him by Perry Hyatt, now deceased, in an action at law. The grounds upon which relief is sought are an alleged conspiracy between Perry Hyatt and his wife, aided by his brothers and sisters, who are defendants and who claim to be distributees of his estate, fraudulently to procure the judgment by perjured testimony and the creation of feigned conditions which are specifically set forth in the complaint. For this reason resort is had to the equitable jurisdiction of the court on the principle that the plaintiff's wrongs can be redressed and his rights

enforced only by such remedial justice as is administered exclusively in courts of equity. It is true that if the remedy afforded at law would be incomplete or inadequate equity will always entertain jurisdiction to give relief in a case of fraud. But fraud is a generic term. While several definitions of the word have been given, it has often been said that no definition can be framed which will be all-inclusive, and that each case must be determined on its own facts. The principle is directly applicable in the present case.

In a discussion of the conditions under which a judgment obtained by fraud may be vacated by a court of equity Freeman in his work on "Judgments," observing the distinction between intrinsic and extrinsic fraud, remarks that "extrinsic or collateral fraud operates not upon matters pertaining to the judgment itself, but relates to the manner in which it is procured." He illustrates the definition by the following excerpt from "the oft-quoted statement of *Justice Miller*" in *United States v. Throckmorton,* 98 U. S., 61, 25 Law Ed., 93: "Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently and without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree and open the case for a new and fair hearing."

Freeman refers to perjury and false swearing as intrinsic fraud (sec. 1241), and says: "It must be borne in mind that it is not fraud in the cause of action, but fraud in its management, which entitles a party to relief. The fraud for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment. If the cause of action is vitiated by fraud, this is a defense which must be interposed, and unless its interposition is prevented by fraud, it cannot be asserted against the judgment; 'for judgments are impeachable for those frauds only which are extrinsic to the merits of the case, and by which the court has been imposed upon or misled into a false judgment. They are not impeachable for frauds relating to the merits between the parties. All mistakes and errors must be corrected from within by motion for a new trial, or to reopen the judgment, or by appeal.' The fraud must be in some matter other than the issue in controversy in the action. The rule that fraud, to be a ground for relief, must be extrinsic or collateral to the matter tried in the first action, is almost universally acquiesced

in. It is merely an application of the general principle that equity will not interfere simply to give a second opportunity to relitigate that which has already been fully litigated." Freeman on Judgments (5 ed.), sec. 1233.

The objection to relitigation rests upon solid ground. As observed by *Mr. Justice Miller:* "If the court has been mistaken in the law, there is a remedy by writ of error. If the jury has been mistaken in the facts, there is the same remedy by motion for new trial. If there has been evidence discovered since the trial, a motion for a new trial will give appropriate relief. But all these are parts of the same proceeding, relief is given in the same suit, and the party is not vexed by another suit for the same matter. So in a suit in chancery, on proper showing, a rehearing is granted. If the injury complained of is an erroneous decision, an appeal to a higher court gives opportunity to correct the error. If new evidence is discovered after the decree has become final, a bill of review on that ground may be filed within the rules prescribed by law on that subject. Here again, these proceedings are all part of the same suit and the rule framed for the repose of society is not violated."

The principle was concisely stated in *Tovy v. Young,* Prec. in Ch., 193, 24 Eng. Reports, 93, in which the Lord Keeper, dismissing a bill to set aside a judgment, said: "New matter may in some cases be ground for relief; but it must not be what was tried before; nor when it consists in swearing only, will I ever grant a new trial, unless it appears by deed or writing, or that a witness, on whose testimony the verdict was given, were convicted of perjury, or the jury attainted."

This was followed by *United States v. Throckmorton, supra,* in which the Supreme Court stated the principle that relief may be given to a party against whom a judgment has been rendered if the fraud practiced upon him prevented him from presenting all his case to the court, but that a judgment will not be set aside on perjured testimony or for any matter that was presented and considered in the judgment assailed. The decisions, it is said, established this doctrine: "The acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered." It is undoubtedly true, said Freeman, that the authority of this case is still unshaken. Section 1233. It has become a precedent for a large number of later decisions.

The parties to an action must be prepared to meet and expose perjury; they know that a false claim can be supported in no other way, and that the object of the trial is to ascertain the truth. In *Pico v. Cohn,*

13 L. R. A. (Cal.), 336, it was held that perjured testimony procured by bribery on the part of the successful party is not ground for setting aside a final decree, although it is reasonably certain that the result of a new trial would be different. After remarking that the trial is a party's opportunity for making the truth appear, the Court said: "If, unfortunately he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him, on motion for a. new trial, and the judgment is affirmed on appeal, he is without remedy. The wrong, in such case, is, of course, a most grievous one, and no doubt the Legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischief far worse than the evil to be remedied. . Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is that a final judgment cannot be annulled merely because it can be shown to, have been based on perjured testimony; for, if this could be done once, it could be done again and again, *ad infinitum.*"

Among the many other cases in which these principles are declared are *Greene v. Greene,* 2 Gray, 361, 61 A. D., 454; *Graves v. Graves,* 10 L. R. A. (N. S.) (Ia.), 216; *Nelson v. Meehan,* 12 L. R. A. (N. S.), 374, 155 Fed., 1; *Gray v. Barton,* 28 N. W. (Mich.), 95; *Reeves v. Reeves,* 25 L. R. A. (N. S.) (S. D.), 574; *Michael v. Am. Nat. Bank,* 95 N. E., (Ohio), 905; 38 L. R. A. (N. S.), 220; *Bates v. Hamilton,* 66 A. S. R. (Mo.), 407; *Wabash R. Co. v. Mirrieless,* 81 S. W. (Mo.), 437; *Fealey v. Fealey,* 43 A. S. R. (Cal.), 111.

Our own decisions have from the beginning been in accord with these principles. In *Gatlin v. Kilpatrick,* 4 N. C., 147, it was held that if a party's claims have been decided by a court of competent jurisdiction and he has had an opportunity of presenting them he shall no longer be at liberty, if unsuccessful, to harass his adversary; and the reason is clearly given in *Jones v. Jones, ibid.,* 547. Equity will not set aside even an "unconscientious verdict at law unless it were not competent to the complaining party to make his defense in a court of law." *Peace v. Nailing,* 16 N. C., 289.

The question under discussion was suggested in *Dyche v. Patton,* 43 N. C., 295; it was not decided because not presented by the case on appeal; but it was afterwards brought up in the same case and the Court held that a verdict obtained in a court of law by perjured testimony would not be set aside unless the witness on whose testimony the verdict was given had been convicted of perjury or a sufficient reason was given for failure to prosecute him. *Dyche v. Patton,* 56 N. C., 332. This was approved in *Moore v. Gulley,* 144 N. C., 81, *Justice Walker* remarking, "Numerous cases have been decided in this Court involving

McCoy *v.* Justice.

the question now presented to us, and we believe that in all of them the principle stated in *Tovy v. Young* has been followed, and a conviction of the alleged perjury required as a condition of granting equitable relief." The principle was stressed in *Mottu v. Davis,* 153 N. C., 160, in these words: "It has been held by many courts, and the text writers seem to adopt the principle as settled by the great weight of authority, that perjury, being intrinsic fraud, is not ground for equitable relief against a judgment resulting from· it, but the fraud which warrants equity in interfering with such a solemn thing as a judgment must be such as is practiced in obtaining the judgment and which prevents the losing party from having an adversary trial of the issue." Of similar import are *Williamson v. Jerome,* 169 N. C., 215; *Kinsland v. Adams,* 172 N. C., 765.

The authorities we have cited reduce the entire controversy practically to the consideration of one question: Did the plaintiff offer such competent evidence of extrinsic fraud in procuring the judgment he assails as would justify a court of equity in vacating the judgment? That the complaint is sufficiently comprehensive has been adjudicated. *McCoy v. Justice,* 196 N. C., 553. Whether the evidence is adequate is quite another matter.

Does the evidence proposed by the plaintiff to establish fraud relate only to "the merits between the parties"—to the issues joined upon the pleadings, or does it relate to some matter which "prevented the plaintiff from presenting his defense"? Does the proposed evidence pertain to "matter that was presented and considered in the judgment assailed," or does it show that there was not "a real contest in the trial or hearing of the case"? Whether the alleged fraud was intrinsic or extrinsic depends upon the answer to these questions. If it was extrinsic, the judgment should be vacated; if intrinsic, pointing to false swearing, it should be vacated only when it appears that the witness has been convicted of perjury.

Let us turn now to consideration of the plaintiff's exceptions, thirty-four in number.

The plaintiff offered in evidence the whole record in the case of *Annie Hyatt v. W. L. McCoy,* 194 N. C., 25, including the complaint, demurrer, judgment, and opinion of the Supreme Court. The demurrer and the opinion were excluded, and the complaint was admitted as against Annie Hyatt only. The demurrer raised a question of law and the opinion of the Supreme Court was a judicial utterance; neither of them proved any fact. In our research we have not discovered anything in this complaint which tends to show that Annie Hyatt unlawfully conspired with her husband to prosecute his action against McCoy. But suppose it be·granted that her complaint was not true: false allegations

in a pleading ordinarily fall within the category of intrinsic fraud; as a rule they are not such fraud as warrants equitable relief, because "the truth or falsity of the matters alleged is conclusively determined by the judgment in the absence of some other ground for equitable interference." Freeman on Judgments (5th ed.), secs. 233 and 1237. As was said in *United States v. Beebe,* 180 U. S., 343, 45 Law Ed., 563: "The statements had no tendency to prevent full preparation for trial on the part of complainant, nor did they tend in any way to obstruct the full presentation of the cause of action against the defendants on the trial. It is plain, therefore, that the representations, assuming them to have been false, could not constitute such a fraud as upon well-settled principles a court of equity will relieve against by setting aside a judgment in a case where such representations were made."

This applies with equal force to the appellant's offer to introduce the record in *Perry Hyatt v. McCoy.* The judgment was admitted by the parties; and several allegations in Hyatt's complaint had been introduced previously, without objection by the defendants. The first and second exceptions, therefore, are without any substantial merit.

The plaintiff offered in evidence (1) a part of the thirteenth paragraph of his complaint in the present action setting forth the institution of a proceeding by Annie Hyatt against the administrator of Perry Hyatt, to recover a distributive share of her husband's personal estate, and, in her reply to the answer filed, certain allegations to the effect that at no time did she abandon her husband, or refuse to live with him or elope with McCoy, or that her absence from home at the death of her husband was due to her alleged misconduct, and that her husband provided for her support and maintenance until his death; (2) an admission by Annie Hyatt and the administrator and some other defendants that she had brought the proceedings; (3) the complaint in the case of Annie Hyatt against the administrator; (4) a paragraph in the reply of Annie Hyatt in which she denied having improper relations with McCoy on the occasions and at the places described in the answer.

It appears from the record that this evidence was offered to prove that a material part of Annie Hyatt's testimony in her husband's case was untrue. To sustain the proffered evidence the appellant rests his argument on the familiar principle that statements in pleadings are admissible against the party making them and that inconsistent or contradictory statements, made by a person orally or in writing, may generally be proved against him. The doctrine is generally approved in text books and judicial opinions, and we have no disposition to challenge its soundness. *Sawyer v. R. R.,* 145 N. C., 24; *Ledford v. Power Co.,* 194 N. C., 98, 102. But in this instance it is not available to the appellant. In the first place a careful comparison of the testimony of

Annie Hyatt in the suit brought by her husband with her replication in her suit against Justice as administrator, raises grave doubt whether her various statements are essentially inconsistent on the vital points of the controversy; but if in any view they can be so considered her alleged contradictions are nothing more than proof of false swearing in behalf of her husband; and this, as we have seen, is intrinsic fraud, which is not enough to require that the judgment be annulled. For these reasons exceptions 3-9, inclusive, must be overruled.

Exceptions 10-19 are addressed to the exclusion of certain parts of the deposition of Y. V. Dudley. This witness testified that he had been in the employ of McCoy; that he had frequently visited Perry Hyatt, and that he knew when Hyatt brought his suit against McCoy. The appellant then offered in evidence statements in the deposition to the effect that Hyatt had told the witness that for his own injuries he had settled with McCoy for $2,000, and that he had in mind a scheme by which "if it worked out, they could get more money out of McCoy"; that at a later date he explained his scheme as an agreement between him and his wife that she should leave home and stay away until he had won his case against McCoy; that they had separated under this agreement; and that she would return after the case was won. This part of the deposition was excluded. It was offered against Annie Hyatt and the personal representative of her husband as evidence tending to show the furtherance of a common design. There is no doubt of the general proposition that the declarations of one of the parties to an unlawful conspiracy, relating to the combination, are evidence against the others, though made in their absence, provided the parties were at the time of the declarations engaged in the consummation of the common purpose. *Edwards v. Finance Co.,* 196 N. C., 462. But when we undertake to apply this principle in an action instituted to set aside a judgment rendered by a court of competent jurisdiction we are confronted with the primary question whether the alleged conspiracy, if proved, is anything more than an agreement to give perjured testimony in Perry Hyatt's action against McCoy. On this question *Rollins v. Henry,* 84 N. C., 569, cited by the plaintiff is not in point; there a decree was entered by consent of the litigants in fraud of the rights of other parties. If Hyatt and his wife conspired to give false testimony concerning their separation, their offense was an agreement to commit perjury; they committed perjury if they gave false testimony on oath. But as to this the fraud they perpetrated, if any, was fraud in the cause itself and not in the procurement of the judgment, and did not deprive McCoy of any defense he had. If there was a fictitious separation the situation was to be met as in any other case of perjury. "It has been well said that every litigant enters upon the trial of a cause knowing not

merely the uncertainty of human testimony when honestly given, but that, if he has an unscrupulous antagonist, he may have to encounter fraud of this character and that he must take the chances of establishing his case by opposing testimony, and by subjecting his opposing witnesses to the scrutiny of a searching cross-examination. Hence, the case is none the less tried on its merits, and the judgment rendered is none the less conclusive by reason of the false testimony produced" (15 R. C. L., 770, sec. 222); and the limitation on this rule will not be modified by the discovery after the trial of additional evidence in proof of the fraud. In *Thompson v. Thompson,* 26 L. R. A. (N. S.) (Ga.), 536, it is aptly said: "To set aside a verdict and judgment for fraud, where the particular fraud was in issue, because of the discovery of additional evidence to prove it, would deprive a judicial finality—a judgment—of its inherent and distinguishing characteristic. The same reason for annulling a judgment because of the discovery of new evidence to establish the fraud would apply to the unfortunate litigant who had been unjustly charged with fraud, so as to give him another opportunity to raise anew the issue of fraud on newly discovered evidence of his innocence."

In any event the excluded testimony was harmless because the substance of it was brought out on Dudley's cross-examination. These exceptions disclose no adequate cause for a new trial.

The next group (exceptions 20-23) related to asserted error in the exclusion of certain papers claimed to be letters written by Hyatt to his wife and from her to him, in reference to their separation. One of them, purporting to have been written by him, is dated 20 July, 1926; three, purporting to have been written by his wife, are dated 23 July, 1926, 24 December, 1926, and 21 January, 1927. Hyatt's case against McCoy was tried in November, 1926.

The letters were properly excluded under the principles hereinbefore discussed and for the additional reason that they were privileged communications. In what way did the plaintiff get possession of them? He testified: "I heard a conversation between Hal Zachary and Dean Sisk and Annie Hyatt in Sisk's office. She said, 'I brought the letters between Perry Hyatt and myself.' I was not in the office, but I heard the conversation. I was in Dr. Williams's office. Probably half hour after that Hal Zachary brought these letters in my office and said these are the letters Mrs. Hyatt had. (Record, 109.) . . . Mr. Hal Zachary handed me this letter in the office one day. I don't know how he got it except what Mrs. Hyatt told me later, that it was a letter she received from her husband and she gave it to Hal. I had the letter in my hand then. I think she told me to keep it for awhile and I was to return it later, but I never did." (Record, 108.)

That the letters were confidential communications is not questioned. "No husband or wife shall be compellable to disclose any confidential communication made by one to the other during their marriage." C. S., 1801. The reason of the rule is grounded in public policy, which seeks to preserve the peace, confidence, and tranquility of husband and wife. *Whitford v. Ins. Co.,* 163 N. C., 223. In *S. v. Wallace,* 162 N. C., 623, it was held that a third person may testify to an oral communication between husband and wife although his presence was not known; also that written communications would be admissible if procured by a third party without the consent or privity of the husband or the wife. This conclusion in effect adopts the principle stated by *Mr. Justice Miller,* of the Supreme Court of the United States in *Bowman v. Patrick,* 32 Fed., 368: "We think the policy of the law will be best subserved by refusing to admit written communications of this character, whenever they come within the possession of a third party by the agency of the husband or wife. . . . I am quite clear that the wife has no right to publish those communications; that she would not be permitted to produce the letter if she were a witness on the stand; and that, she should be enjoined from producing the letter if she were supposed to be hostile to her husband." Numerous decisions in support are cited in the annotations of *Gross v. State,* 33 L. R. A. (N. S.), 481. It is too clear for doubt that the plaintiff procured these letters with the consent, if not the privity, of Annie Hyatt.

The letters are not admissible against her individually. It is so held in *S. v. Brittain,* 117 N. C., 783: "As a general rule evidence competent against one defendant only is admissible, with instruction by the court that it shall not be received as evidence against the other. To this general rule the confession in this case is an exception, and is so on the ground of public policy. The relation of husband and wife is confidential, from unity of interest and sometimes unity of person, as in case of a joint estate to them. The law requires and extorts this confidence, and it will protect it. Communications between them cannot be exposed to public view. The interest of the home, the parties, the children, and especially the peace and order of society forbid it. Lord Coke said: 'It hath been resolved by the justices that a wife cannot be produced either against or for her husband *quia sunt duae animae in corne una;* and it might be a cause of implacable discord and dissension between the husband and wife and a means of great inconvenience.' Co. Litt., 6 b. It is true that the confession under consideration does not affect the husband in a legal sense, but it does affect her, and it violates the principle of public policy above referred to."

The remaining exceptions are void of merit. The twenty-fourth and twenty-fifth have been disposed of; the proposed testimony which is the

subject of the twenty-sixth is hearsay; it does not appear that Annie Hyatt heard any of the conversations she refers to, or that any of the parties were present when she made her statements to McCoy, or that she had personal knowledge of any of the transactions. Her entire testimony is a series of narratives in hearsay, in the exclusion of which the court committed no error. The twenty-seventh, twenty-eighth and twenty-ninth relate to incompetent evidence. The affidavit of Annie Hyatt, signed 7 March, 1928, was offered for the purpose of proving the alleged conspiracy between her and her deceased husband and that her testimony given in her husband's action against McCoy was false. Exception 30: The incompetency of this evidence is manifest upon the principles above set forth. The last four exceptions are untenable and require no discussion.

We have given the record deliberate and careful consideration. The essence of the plaintiff's case, however diverse its several elements, is crystallized in an effort to set aside the judgment upon the ground of false testimony. If the judgment were vacated for this cause and the plaintiff were again the unsuccessful party why could he not assail the second judgment upon similar allegations? It is for the public good that there be an end to litigation. This maxim "embraces the whole doctrine of estoppels, which is obviously founded in common sense and sound policy, since, if facts once solemnly affirmed to be true were to be again denied whenever the affirmant saw his opportunity, there would never be an end to litigation and confusion." Brown's Legal Maxims, 337.

Judgment

Affirmed.