J. A. P. MOTTU v. J. A. DAVIS.

(Filed 12 October, 1910.)

1. Judgments of Other States — Collateral Attack — Fraud — Perjury—Allegations—Demurrer.

While perjury is a fraud in obtaining a judgment, and judgments obtained in another State may be impeached here for fraud, the facts should appear that the courts may see and determine whether new evidence relied on is merely contradictory or cumulative of that offered on the former trial, and that the probable result will be different if the relief is granted; and a demurrer ore tenus to a complaint alleging the "belief" that plaintiff is now prepared "to show that the said testimony was, in fact, false," should be sustained.

2. Judgments of Other States—Jurisdiction—Issues.

In this action to set aside a judgment of the court of another State, an issue as to the jurisdiction of the foreign court was

submitted, and it appearing that the necessary jurisdiction was conferred by the statutes of that State introduced in evidence without objection, an instruction to find in favor of the jurisdiction was proper.

APPEAL from *Guion, J.,* at the April Term, 1910, of EDGE-COMBE.

This case was before the Court at Fall Term, 1909, and is reported in 151 N. C., 237. The Court then directed that an issue as to the jurisdiction of the Corporation Court of Manchester, Virginia, be submitted to the jury. After the certificate of this Court had been filed in the Superior Court, the defendant moved to amend his answer by substituting for the fifth section, the following: "The defendant is informed and believes, and so alleges, that plaintiff obtained the judgment upon fraudulent, false, material and pertinent testimony offered by him in order to secure the same, viz: That said cotton described in the complaint was actually purchased by him on defendant's account through Ladenburg, Thalman & Co., of New York, and there stored in a warehouse; that said purchase was not made by the parties with the intent that said cotton was not to be delivered, but should be settled for according to the future market, as the price should be greater or less at the time of sale; that he had not been advised by an attorney in North Carolina that he could not collect on the contracts in the State of North Carolina, but had so concluded by reading the statute himself; that he had paid to C. De Witt, his partner, one-half of the amount of the alleged account; whereas, defendant is informed and so believes and avers that said statements were not at the time and never had been true; that especially it is not true that plaintiff purchased the actual cotton of Ladenburg, Thalman & Co., on defendant's account and stored it in a warehouse, and that the same was purchased with intent that it should be delivered and not settled for according as the future market price should rise or fall. The defendant had no knowledge or information before the trial that plaintiff made any such claim or claims in respect to such trade and dealings, and was therefore taken by complete surprise and was unable to meet the same, as his first informa-

153—11

tion thereof was in the midst of the trial, but he believes he is now prepared to show said testimony was in fact false, and but for said false testimony plaintiff could not have secured the judgment sued on in this action." The court, over plaintiff's objection, allowed the amendment to be made by the defendant. The plaintiff at first replied to the answer and denied the allegations of the fifth section as amended. When the case was called for trial, the plaintiff demurred *ore tenus,* upon the ground that the allegations of that section of the amended answer did not constitute a defense to the action. The court sustained the demurrer and refused to submit the issue of fraud to the jury, and the defendant excepted. The issue as to the jurisdiction of the Virginia court was submitted to the jury and found in favor of the plaintiff. The court instructed the jury that, upon all the evidence, their answer to the issue should be, Yes, to which charge the defendant excepted, and from a judgment upon the verdict in favor of the plaintiff, he appealed.

*J. R. Gaskill, Overton Howard* and *F. L. Spruill* for plaintiff.

*G. M. T. Fountain* for defendant.

Walker, J. The defendant has not, in the amendment of his answer, presented a case which entitled him to the favorable consideration of the Court. It has been held by many courts, and the text writers seem to adopt the principle as settled by the great weight of authority, that perjury being intrinsic fraud, is not ground for equitable relief against a judgment resulting from it, but the fraud which warrants equity in interfering with such a solemn thing as a judgment must be such as is practiced in obtaining the judgment and which prevents the losing party from having an adversary trial of the issue. Perjury is a fraud in obtaining the judgment, but it does not prevent an adversary trial. "The losing party is before the court and is well able to make his defense. His opponent does nothing to prevent it. This rule seems harsh, for often a party will lose valuable rights because of the perjury of his adversary. However, public policy seems to demand that there be an end to litigation. If perjury

were accepted as a ground for relief, litigation might be endless; the same issues would have to be tried repeatedly. As stated in the leading case, 'the wrong, in such case, is of course a most grievous one, and no doubt the Legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied.' Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is, that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for if this could be done once, it could be done again and again *ad infinitum."* 6 Pomeroy's Eq. Jur., sec. 656, and cases cited in note; *U. S. v. Throckmorton,* 98 U. S., 61; *U. S. v. Beebe,* 180 U. S., 343. While the doctrine, as thus stated, has been adopted in many jurisdictions, this Court has held that a verdict and judgment obtained by perjured testimony may, under certain circumstances, be set aside and a new trial ordered, or that relief against the judgment may be awarded in some other form. *Pegram v. King,* 9 N. C., 605; *Dyche v. Patton,* 56 N. C., 332; *Burgess v. Lovengood,* 55 N. C., 457. It is said, though, that this power should be exercised with extreme caution and that the application of the doctrine being greatly restricted, is confined to cases which present peculiar circumstances, under the maxim that the public interest requires that there should be an end to litigation. *Burgess v. Lovengood, supra.* It is further said in that case that "there must not only be newly discovered evidence, but such evidence must bear directly upon the merits of the case, and must be decisive of it, and not tend simply to impeach the testimony of a witness at a former trial, or to add cumulative evidence as to a matter before controverted. . . . It is not alleged that any new matter was discovered, and the plaintiff relies upon the general allegation that the testimony upon which the certificate issued was false, but he was unable to prove it, because there was no way of getting his witnesses before the commissioners, and upon the further general allegation that both the Cardens 'were, as now, and have been generally, citizens of the State of Tennessee.' It is useless to consume time by going into particulars for the pur-

pose of showing that such general allegations cannot make a case to which the doctrine as to the interference of courts of equity with verdicts and judgments in the courts of law is applicable. It is also useless to refer to the evidence, except to remark that no particular falsehood is proved, either by deed, *writing, or conviction of perjury,* or in any other way, except by proof of general admissions and conversations of the parties, deposed to by witnesses who themselves appear under very questionable circumstances." The Court will not even grant a motion for a new trial upon the ground that evidence has been discovered since the trial of the case, unless it is shown: 1. That the witness will testify as alleged. 2. That the evidence he will give is apparently true. 3. That it is material and will probably change the result. 4. That the applicant has not been guilty of laches in not obtaining the testimony at the trial, but has used due diligence. 5. That manifest injustice and wrong has been done and no other relief is attainable. The motion will be denied if the new evidence tends only to contradict a witness, who was examined at the trial, or to discredit such witness, or if it is merely cumulative. *Turner v. Davis,* 132 N. C., 187; *Simmons v. Mann,* 92 N. C., 12. In this case the averments in the amended answer are all made upon information and belief. It is not stated from what source defendant derived his information. For all that appears the proof, upon which he relies to show the falsity of the testimony introduced by the plaintiff at the trial, may be nothing more than hearsay. He expresses the "belief" that he is now prepared "to show that said testimony was, in fact, false," but whether there is any reasonable expectation that he will be able to do so, we are unable to determine. The new evidence may be merely contradictory of that offered by the plaintiff, or only cumulative. How can we see that it is probable that the result will be different if we grant the relief? If the newly discovered evidence is of such a character as to clearly show the perjury, "it would directly bear upon the merits of the case and might be decisive of it." The belief of the defendant that he can establish the perjury and that the plaintiff acted fraudulently in using the evidence, may be due to his unwarranted confidence in the proof he has discovered, the nature

of which is not disclosed to us. He does not allege that any member of the firm of Ladenburg, Thalman & Co. will testify to the facts he states in the amendment. The power of a court of equity to grant a new trial in a case at law, or to afford other relief from a verdict and judgment alleged to have been obtained by fraud, is capable of great abuse and has always been exercised with great caution. *Dyche v. Patton,* 56 N. C., 332. It is easy to allege, upon information which may turn out to be unreliable or even worthless, that your adversary won his case by fraudulent practices, and to avoid doing him an injustice, the court should require a free disclosure of the facts in order that it may proceed intelligently and with due regard for the rights of both parties, and that when litigation is once closed, it may not be reopened upon slight or frivolous grounds, but only for good and sufficient cause, so that there may, as far as possible, be an end to further strife. It would appear from defendant's new averment that he expects only to contradict the plaintiff's former evidence, and thus to fortify or reinforce the defense which he made to the suit in the Virginia Court. It would be dangerous to heed such an application without fuller and more satisfactory allegations as to the probability that another hearing will result favorably to the defendant. We should, at least, know the character of the new evidence.

In the case of *Dyche v. Patton, supra,* the proofs had been taken upon bill and answer, but the court refused to examine them upon the ground that the bill was fatally defective in not alleging a conviction of the imputed perjury, although it was charged directly and explicitly that a witness, who was called by the plaintiff in the suit at law, had testified falsely and corruptly to a material matter with the knowledge of said plaintiff, who wilfully and corruptly suborned and procured the witness thus falsely to testify in his behalf, and that the fact of the falsity of the testimony had come to complaintant's knowledge just before he filed his bill of complaint. The bill was dismissed as upon demurrer *ore tenus.* It was in that case Chief Justice Nash quoted with approval the words of his predecessor, Chief Justice Ruffin, used by him when at the bar as counsel for the defendant in *Peagram v. King,* 9 N. C., 605. Referring to

the rule which calls for satisfactory and decisive allegation and proof in such cases, he said: "It results from the palpable truth of the position that a second or third trial, or any number of trials, will not and cannot, in the nature of things, ensure a final decision absolutely just." Public convenience, as well as private interests, require that there should be an end of litigation, and a sufficient case should be clearly presented before a court is asked to interfere with the verdict of a jury and the solemn judgment of the law. We should not be required to grope in the dark or to surmise that the party *may* possibly be able to turn the verdict into one for himself.

When this case was here before we held that fraud in procuring the judgment in the Virginia court could be set up as a defense in this action, but that no such fraud had been properly pleaded. We do not think the defendant has yet presented a case of fraud which a court of equity recognizes as sufficient for its intervention.

The other question is easy of solution. An issue was submitted to the jury as to the jurisdiction of the Corporation or Hustings Court of Manchester, Virginia. The statutes of that State were introduced without objection, and it appears therefrom that it is a court of superior and general jurisdiction in that city, and has the same jurisdiction as the Circuit Courts in the counties. The jurisdiction of the suit in Virginia clearly appears from an inspection of the statute. The charge of the court as to the law in this respect was correct.

We find no error in the several rulings of the court.

No error.