JOSEPH TELESPHORE MILLER, JR., v. FIRST NATIONAL BANK OF CATAWBA COUNTY.

(Filed 31 October, 1951.)

1. **Executors and Administrators § 13a—**

A court of equity has jurisdiction of an action by the personal representative to obtain approval of the court for the sale of assets of the estate to pay debts and to effectuate the purposes of the trust set up by the will, all beneficiaries of the estate being made parties.

2. **Judgments § 25—**

Mere irregularities in the rendition of a judgment within the jurisdiction of the court does not subject the judgment to collateral attack by independent action, the remedy being by motion in the cause.

3. **Fraud § 1—**

Constructive fraud is based upon breach of a fiduciary obligation, and intent to deceive and actual dishonesty are not requisite.

4. **Judgments § 27e—**

In order to be ground for collateral attack of a judgment, fraud must be extrinsic and relate to the manner in which the judgment was procured and be such fraud as prevents the court from considering the cause on its merits.

5. **Executors and Administrators § 31: Judgments § 27e—Allegations held insufficient to show extrinsic fraud in obtaining judgment authorizing sale of assets of estate.**

It appeared from the complaint and the judgment rolls attached thereto that the judgment authorizing the executor to sell to the issuing corporation certain stock constituting personal assets of the estate was entered in an action in which the minor beneficiary was represented by a competent guardian *ad litem,* who made full investigation, that the sale of the assets was necessary to pay debts of the estate and to effectuate the purposes of the trust set up by the instrument, that interested persons *sui juris* sold their stock upon identical terms, that the stock at that time was not marketable, and that a comparable sum could not be obtained by forced liquidation of the corporation. The complaint further alleged that the trustee negligently failed to sell the stock at an earlier date when the stock had a ready market, that the later sale was made necessary by the trustee's own mismanagement, that the trustee was interested in the corporation

purchasing the stock by reason of interlocking directorates and business associations, and that such sale was for less than the value of the stock and against the interest of the minor. *Held:* Even though the complaint be sufficient to allege constructive fraud it is insufficient to allege extrinsic fraud in the procurement of the judgment so as to render the judgment subject to collateral attack.

**6. Judgments § 32—**

While ordinarily estoppel by judgment must be pleaded, where all the facts necessary to constitute the estoppel are set out in the complaint for the purpose of attack, and defendant moves to strike the allegations on the ground that the matters alleged were precluded by the judgment, the question of estoppel by judgment is properly presented.

**7. Pleadings § 31—**

While the insufficiency of the complaint to state a cause of action must be raised by demurrer, where certain paragraphs thereof are precluded by prior judgment between the parties, objection to such portions may be raised by motion to strike, since in such case they are "irrelevant" for the purpose for which they were inserted. G.S. 1-153.

APPEAL by defendant from *Gwyn, J.,* May Term, 1951, of CATAWBA. Reversed.

Plaintiff's action is to surcharge and falsify the accounts of First Security Trust Company (now merged with defendant Bank) as executor and trustee of the estate of plaintiff's father, Joseph Telesphore Miller, and to recover amounts alleged to be due by reason of negligence and mismanagement by the fiduciary.

The case comes up on defendant's appeal from the ruling of the trial judge denying its motion to strike certain portions of the complaint hereinafter set out.

It is alleged in the complaint that defendant First National Bank of Catawba County is successor of First National Bank of Hickory, and that by merger or consolidation a subsidiary corporation, First Security Trust Company, was taken over and its operations and fiduciary business continued, defendant acquiring its assets and assuming its liabilities; that First Security Trust Company was made executor and trustee under the will of Joseph T. Miller, who died in 1935, and took possession of all the real and personal property of his estate, of which the plaintiff, the only son of the testator, was the principal beneficiary. It was further alleged that the named Trust Company was grossly negligent and mismanaged the estate, particularly in respect to dealing with the shares of stock of Hutton & Bourbonnais Company, which it failed to dispose of advantageously; that 754 shares of par value of $100 which would have belonged to plaintiff were wrongfully disposed of. In section 10 of the complaint it is alleged the First Security Trust Company as executor in 1939 instituted action against the plaintiff, then 17 years of age,

alleging there was no ready market for these shares and asked that the real estate devised to plaintiff be sold to prevent sacrifice of values, though the personal estate was more than sufficient, and it is alleged this was done to extricate itself from the results of its own negligence. It was alleged that the Superior Court was without jurisdiction to entertain this action.

Defendant moved to strike section 10 of the complaint, and also sections 11, 12, 13 and 14, which are quoted in full as follows:

(11) "Following the commencement of the said suit the plaintiff's mother employed counsel for the purpose of preventing the sale of the real estate belonging to him, and for the further purpose of trying to protect his and her interests in the estate and the administration thereof. Counsel so employed endeavored to get the cooperation of First Security Trust Company and of Hutton & Bourbonnais Company in making an appraisal of the assets of Hutton & Bourbonnais Company for the purposes of determining the true value of the stock of Hutton & Bourbonnais Company, and for the further purpose of attempting to work out some plan which would conserve the value of the said stock and enable the First Security Trust Company, as Executor under the will of the plaintiff's father to obtain enough cash to settle the estate. During 1939, and particularly after the invasion of Poland by Germany in September 1939, business began to improve rapidly, and there was substantial improvement in the lumber business, in which Hutton & Bourbonnais Company was engaged. These facts were well known to the First Security Trust Company and to its attorney. Notwithstanding the general improvement in business, and the specific improvement in the affairs of Hutton & Bourbonnais Company which increased the value of its stock, the First Security Trust Company failed to cooperate with counsel employed by plaintiff's mother or to act on its own account to the extent that it virtually abdicated the duties of its office as Executor under the will of the plaintiff's father in connection with the stock of Hutton & Bourbonnais Company. By its wrongful conduct, it created a situation in which the sale of the stock at a fair price was rendered impossible, and in which there were only two choices; first, to sell the stock at what could be obtained for it without resorting to an attempt to force a liquidation, or, second, to attempt to force a liquidation and reorganization of Hutton & Bourbonnais Company through a receivership, the outcome of which was doubtful both as to whether the Court would appoint a receiver, and as to the amount which could be finally derived from the liquidation. The plaintiff is informed, believes and alleges that this situation was produced by the negligence and misconduct of the First Security Trust Company as herein alleged. Counsel employed by plaintiff's mother finally agreed to a sale of the stock upon the terms hereinafter set forth, but plaintiff is informed, believes and alleges that such agreement was

made because of the situation then existing, and not because it was believed that the purchase price represented the actual and true value of the said stock."

(12) "In the meantime, on September 11, 1939, counsel employed by plaintiff's mother had been appointed his guardian *ad litem* in the action then pending and there had been several extensions of time to file answer therein. The plaintiff's mother was not made a party to said action until the May Term in 1940. On June 17, 1940, First Security Trust Company filed in said action a purported pleading, described as an amended petition, in which it sought the authority of the Court to transfer 1171 shares of the stock of Hutton & Bourbonnais Company to that corporation in exchange for the stocks described in Paragraph 11 of the petition, $6,500.00 in cash, $6,500.00 in real estate and $21,500.00 payable at the rate of $5,000 twelve months after date, $5,000 two years after date and $11,500 three years after date. The said amended petition among other things alleges that Alice Williamson Miller, the decedent's widow, Mary Alice Coyle Carter and Natalie Coyle desire that their shares of the stock of Hutton & Bourbonnais Company be sold and that they accept in lieu thereof their proportionate part of the net proceeds of the sale. It further alleges that the petitioner has made a careful investigation of the affairs of Hutton & Bourbonnais Company and that it is convinced that the offer is a fair and reasonable one and that 'it is far more than your petitioner can hope to secure by a public sale of said stock and that it is as much as your petitioner could realize by a forced liquidation of Hutton & Bourbonnais Company.' Nowhere in the said petition is there any allegation as to the true value of the said stock nor as to the true value of the stocks, real estate and notes for which the said stock was exchanged. One of the conditions imposed upon the acceptance of the offer by the First Security Trust Company was the consent of all of the stockholders of Hutton & Bourbonnais Company and the plaintiff's Guardian *Ad Litem* imposed an additional condition that it be consented to by all the creditors of Hutton & Bourbonnais Company, and that the Court in its judgment finds that the offer made by Hutton & Bourbonnais Company was made with the approval of its creditors and the consent of all its stockholders. Answers to the amended petition were filed by the Guardian *Ad Litem* of the plaintiff and by the other defendants on June 17, 1940, the same day on which the said amended petition was filed. Counsel for First Security Trust Company in the action above referred to was Charles W. Bagby, and the plaintiff is informed and alleged that the said Charles W. Bagby represented the First Security Trust Company, Executor under the Will of Joseph Telesphore Miller, at the time of the commencement of said action and throughout all the negotiations and proceedings in said cause."

(13) "The plaintiff is informed, believes and alleges that Hutton & Bourbonnais Company was a debtor of First National Bank of Hickory at the time of the said proceedings, that it was a depositor in said bank, and that it had other business relations with said bank; that one or more of the officers and directors of Hutton & Bourbonnais Company were directors of the First National Bank of Hickory and also of First Security Trust Company; that officers and directors of Hutton & Bourbonnais Company also had private business transactions with First National Bank of Hickory, and also with First Security Trust Company; that First Security Trust Company and Charles W. Bagby, with others, were Executors and Trustees under the will of A. B. Hutton, deceased, and as such Trustees they owned 505 shares in a trust for A. B. Hutton, Jr. and 195 shares in a trust for Doris Hutton Councill, making a total of 700 shares of the stock of Hutton & Bourbonnais Company owned by them as such Trustees. During the month of June 1940 about the same time that the amended petition and answers were filed in the action brought by First Security Trust Company, Charles W. Bagby and others through their attorney, C. David Swift, who was partner of Charles W. Bagby, commenced a civil action in the Superior Court of Catawba County as Executors and Trustees under the will of A. B. Hutton for the purpose of obtaining the authority of the Court to consent to the purchase by Hutton & Bourbonnais Company of the Miller stock. The complaint in said action is verified by Donald Hutton, Charles W. Bagby and by George D. Taylor, an officer of First Security Trust Company. The answer of one guardian *ad litem* in said action was filed on July 3, 1940 and answer of another guardian *ad litem* on July 10, 1940. Judgment in said cause was entered on July 10, 1940, the same day on which the judgment was entered in the case involving the Miller estate. All of the summonses, complaints, answers, orders, judgments and other documents constituting the judgment roll in the two civil actions are hereby referred to and made a part of this complaint, and will be offered in evidence at the trial of this cause, not for the purpose of proving the truth of the contents thereof, but for the purpose of showing the irregularities, inconsistencies, contradictions and omissions therein. The plaintiff had no knowledge of the irregularities in the civil actions referred to in paragraphs 12 and 13 of this complaint nor of the inconsistent positions of the First Security Trust Company and Charles W. Bagby therein until about June 1950."

(14) "The plaintiff is informed, believes and alleges, as hereinbefore alleged, that the Superior Court of Catawba County had no jurisdiction in the action commenced on May 1, 1939, above referred to, that having no jurisdiction, the filing of the amended petition and answers thereafter conferred no jurisdiction; that plaintiff's guardian *ad litem* also represented his mother and two sisters in the said action; that the court did

not hear evidence relating to the true value of the stock of Hutton & Bourbonnais Company or as to the value of the assets of Hutton & Bourbonnais Company so that the Court could arrive at an independent judgment as to the value of the said stock, but that the court's order approving the sale was based upon the alternative of a forced liquidation. The plaintiff is informed, believes and alleges that First Security Trust Company by reason of conflicts of interest had been wholly disqualified to act as executor and trustee under his father's will from the date of its qualification on August 1, 1935, until the sale of said stock of Hutton & Bourbonnais Company in 1940, such conflict of interest arising out of the facts hereinafter set forth. First Security Trust Company was a wholly owned subsidiary of the First National Bank of Hickory, and, by reason of stock ownership and common officers and directors, was under the domination of, and in fact, was the *alter ego* of said bank. The First National Bank of Hickory was, as plaintiff is informed, believes and alleges, directly or indirectly a creditor of Hutton & Bourbonnais Company. The relationship between First National Bank of Hickory and Hutton & Bourbonnais Company and its officers and directors and with members of the Hutton family had been very close for many years. Some of the officers and directors of Hutton & Bourbonnais Company were directors of the said bank. G. N. Hutton, one of the founders of Hutton & Bourbonnais Company, was, until his death, a director of First National Bank of Hickory, and was one of the incorporators and a director of First Security Trust Company. Hutton & Bourbonnais Company and its officers and directors were depositors in the First National Bank of Hickory. First Security Trust Company and its attorney, Charles W. Bagby, were executors and trustees under the will of A. B. Hutton, and as such owned 700 or more shares of the stock of Hutton & Bourbonnais Company. The will of A. B. Hutton prohibited his executors and trustees from selling his stock in Hutton & Bourbonnais Company at a sacrifice. In view of the fact that the sale of the Miller stock to Hutton & Bourbonnais Company was conditioned upon the consent of all of its stockholders and creditors, the executors and trustees of A. B. Hutton were, in effect, buyers of the Miller stock to the extent of their interest in Hutton & Bourbonnais Company so that First Security Trust Company and its attorney on the same day, in the same Court, and before the same judge were representing a buyer and a seller, or were at least representing such conflicting interests as to totally disqualify them from acting as executor and trustee or as attorney for the executor and trustee in the action relating to the sale of the Miller stock. The plaintiff is informed, believes and alleges that the attention of the court was not called to these inconsistencies and conflicts of interest, and that there was no disclosure to the court of the conflicts of interest arising out of the other facts hereinbefore alleged. The plaintiff is further informed, believes and alleges

that the facts herein alleged disqualified First Security Trust Company from acting as Executor or as Trustee under the will of Joseph Telesphore Miller either under the judgment or under the will of Joseph Telesphore Miller or by virtue of its qualifications as executor or trustee."

Defendant also moved to strike the following portion from section 16:

"The plaintiff is informed, believes and alleges that throughout the year 1940 and continuously since that time the stock of Hutton & Bourbonnais Company had a fair market value and an intrinsic value much higher than the amount for which said stock was disposed of or which was actually derived therefrom by the First Security Trust Company. The plaintiff is further informed, believes and alleges that on March 25, 1947, the said stock had a fair market value of not less than $100.00 per share."

Defendant's motion to strike, except as to a small portion of paragraph 12 of the complaint, was denied and defendant appealed.

*Wade Lefler and Ratcliff, Vaughn, Hudson & Ferrell for plaintiff, appellee.*

*T. P. Pruitt and Willis & Geitner for defendant appellant.*

DEVIN, C. J. The defendant Bank appealed from the denial of its motion to strike certain paragraphs from the complaint filed in the suit instituted by the plaintiff to surcharge the accounts of First Security Trust Company as executor and trustee of his father's estate. It is alleged the defendant Bank had absorbed by consolidation or merger the named Trust Company and assumed its liabilities. The gravamen of the charge in the complaint is negligence and mismanagement on the part of the Trust Company constituting a breach of trust, particularly in respect to the sale of 754 shares of stock of the Hutton & Bourbonnais Company which had been bequeathed in trust for the plaintiff under his father's will. Plaintiff, now of full age, seeks to recover damages for the loss alleged to have resulted. He alleges that the conduct of the Trust Company, for which the defendant Bank is now liable, under the circumstances set out at length, amounted to a constructive fraud upon his rights. In order to present the entire matter plaintiff has also set out in his complaint the fact that a judgment of the Superior Court was rendered in a proceeding instituted by the Trust Company as executor in which all interested persons were made parties, including the present plaintiff, approving the sale of the shares of stock now complained of. The judgment roll, including the pleadings, findings and judgment, is attached to the complaint and for the purpose of attack made part of it.

Plaintiff's allegation that the sale of the shares of stock complained of was approved by a judgment of the Superior Court in an adversary action in which the plaintiff here was party defendant and appeared by

a guardian *ad litem* and answered, nothing else appearing, would raise a complete defense to his complaint on that ground, and his allegations of negligence and mismanagement in respect to the sale of this stock would not avail against a valid judgment rendered by a court having jurisdiction of the parties and of the subject matter.

It is alleged that the Superior Court which rendered the judgment was without jurisdiction of the subject matter, but we do not think the judgment is open to attack on this ground, as a court of equity has power to entertain a petition to sell land to pay debts, though personal property remains undisposed of, in order to preserve the personal property from being sacrificed (*Settle v. Settle,* 141 N.C. 553, 54 S.E. 445; *King v. R. R.,* 184 N.C. 442, 115 S.E. 172). However, no action was taken on this petition, and some time later an amended petition was filed, which the present plaintiff's guardian *ad litem* and the adult defendants answered, presenting a proposal for the sale of this stock and asking the court's approval and authority to the executor to conclude the sale for the reasons assigned.

The facts set out would seem to indicate the court had jurisdiction both of the parties and of the subject matter. Hence mere irregularities in the rendition of the judgment would not justify an independent action to avoid its effect. Irregularities may be corrected by motion in the cause. McIntosh, sec. 652; *Simms v. Sampson,* 221 N.C. 379, 20 S.E. 2d 554; *Carter v. Rountree,* 109 N.C. 29, 13 S.E. 716.

The remaining ground left the plaintiff upon which to maintain his action, in the face of the judgment which would otherwise bar his access to the relief demanded, is that of fraud. He alleges the judgment was void for constructive fraud on the part of the Trust Company which entered into the rendition of the judgment.

Constructive fraud differs from active fraud in that the intent to deceive is not an essential element, but it is nevertheless fraud though it rests upon presumption arising from breach of fiduciary obligation rather than deception intentionally practiced. 23 A.J. 756; *Rhodes v. Jones,* 232 N.C. 547, 61 S.E. 2d 725; *Hatcher v. Williams,* 225 N.C. 112, 33 S.E. 2d 617; *City Bank Farmers Trust Co. v. Cannon,* 291 N.Y. 125; *Ryan v. Plath,* 18 Wash. (2) 839.

Constructive fraud has been frequently defined as "a breach of duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive, to violate confidence or to injure public interests. Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud." 37 C.J.S. 211; *Greene v. Brown,* 199 S.C. 218.

The plaintiff alleges in substance that the sale of the shares of stock by the trustee, to the injury of plaintiff, under the circumstances set out in the complaint, constituted a breach of the fiduciary obligation im-

posed upon the Trust Company in good conscience to guard the interests of the infant beneficiary, and was hence constructively fraudulent.

But if plaintiff's complaint be sufficient to allege constructive fraud, he is confronted by another hurdle.

In order to sustain a collateral attack on a judgment for fraud it is necessary that the allegations of the complaint set forth facts constituting extrinsic or collateral fraud in the procurement of the judgment. It is well settled that the fraud for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment. *Horne v. Edwards,* 215 N.C. 622, 3 S.E. 2d 1; *McCoy v. Justice,* 199 N.C. 602, 155 S.E. 452; *Mottu v. Davis,* 153 N.C. 160, 69 S.E. 63; *U. S. v. Throckmorton,* 98 U.S. 61; Freeman on Judgments, sec. 1233. "Extrinsic or collateral fraud operates not upon matters pertaining to the judgment itself but relates to the manner in which it is procured." Freeman on Judgments, sec. 1233.

In *McCoy v. Justice, supra, Justice Adams* quotes with approval from Freeman on Judgments: "For judgments are impeachable for those frauds only which are extrinsic to the merits of the case, and by which the court has been imposed upon or misled into a false judgment. They are not impeachable for frauds relating to the merits between the parties. All mistakes and errors must be corrected from within by motion for a new trial, or to reopen the judgment, or by appeal." Where the fraud is extrinsic or collateral, operating without, the remedy also is without, and the judgment may be collaterally attacked or set aside by an independent action. McIntosh 745; *Carter v. Rountree,* 109 N.C. 29, 13 S.E. 716.

To avoid a judgment on this ground there must be shown extrinsic fraud, or fraud collateral to the matters in issue and heard by the first court, and not fraud in the matter on which the judgment was rendered. *U. S. v. Throckmorton, supra.* "The fraud which warrants equity in interfering with such a solemn thing as a judgment must be such as is practiced in obtaining the judgment and which prevents the losing party from having an adversary trial of the issue." *Mottu v. Davis, supra.*

The question here is whether the fraud charged relates to inequitable conduct on the part of the trustee which prevented the court from considering the plaintiff's case, or whether the court was imposed upon to the extent that facts material to the present plaintiff's case and in his interest were concealed or were not presented. *McLean v. McLean,* 233 N.C. 139, 63 S.E. 2d 138.

The plaintiff's position is that the allegations of his complaint considered in the light favorable for him are sufficient to make out a case of constructive fraud. He contends the facts alleged show that the Trust Company, executor and trustee under the will, in breach of its trust negligently failed in 1938 to sell a portion of the shares of stock referred

to at a time when a price of $50 per share was obtainable, and that in the suit it instituted in 1939 it was seeking to extricate itself from the consequences of its mismanagement; that in the proceeding now attacked it occupied inconsistent positions, and that in consequence of interlocking directorates and close business associations among those who controlled the defendant Bank, its subsidiary the Trust Company, and the Hutton & Bourbonnais Company, the corporation whose stock was the subject of negotiation and sale, interests represented by the executor and trustee were conflicting, and that the trustee in breach of the trust did not act in the interest of the plaintiff who was then 18 years of age; that as result of negligence valuable shares of stock were sold for an inadequate price; that at the same time the sale of 700 shares of stock in the same corporation were being negotiated and sold by the Hutton Estate of which the Trust Company was one of the executors and trustees; that some of the officers and directors of Hutton & Bourbonnais were also directors of the defendant Bank, and the Bank was a creditor of Hutton & Bourbonnais Company.

Plaintiff further alleged that no evidence was presented to the court which rendered the judgment in 1940 as to the true value of the shares of stock; that while judgments were rendered by the court in this case and the Hutton Estate case on the same day, the attention of the court was not called by the trustee to the conflict of interest among the parties in the purchase and sale of this stock. Plaintiff cites as authority for his position, among others: *Graham v. Floyd,* 214 N.C. 77, 197 S.E. 873; *Hatcher v. Williams,* 225 N.C. 112, 33 S.E. 2d 617; *McNinch v. Trust Co.,* 183 N.C. 33, 110 S.E. 663; *City Bank Farmers Trust Co. v. Cannon,* 291 N.Y. 125; *City Bank Farmers Trust Co. v. Taylor,* 69A (2) 234 (R.I.); *Ryan v. Plath,* 18 Wash. (2) 839; G.S. 36-28.

On the other hand, the defendant's motion to strike as irrelevant the allegations in the complaint which relate to the sale of these shares of stock, was based on the ground that according to the complaint and the exhibits attached the sale was approved by a valid judgment of the Superior Court, and that any irregularities alleged are insufficient to justify a collateral attack on this judgment.

It appears from the complaint and the judgment rolls attached thereto that plaintiff's father died testate in 1935, and that at the date of the judgment referred to, July 10, 1940, there was no personal property, except the shares bequeathed in trust for the plaintiff, with which to pay the balance of the debts of the estate and to provide for the maintenance of plaintiff, testator's son; that it had been necessary to ask for orders of court authorizing the executor to borrow money to pay for the education of the plaintiff. In 1939 the executor instituted an action to sell real property for this purpose rather than sacrifice the shares of stock for which it was alleged there was no market. In that suit the court

appointed as guardian *ad litem* of the present plaintiff L. P. McLendon, an experienced and reputable lawyer of the Guilford bar, who had no connection or association with any of the parties interested. The petition to sell land was not prosecuted, but in 1940, a year later, the executor filed an amended petition asking for authority to sell the shares of stock to the issuing corporation the Hutton & Bourbonnais Company upon the terms therein set out. The guardian *ad litem* filed an answer in which he set out that since his appointment as guardian *ad litem* he had personally attended meetings of the stockholders of Hutton & Bourbonnais Company and had repeatedly conferred with officials of the Trust Company, with the mother of the present plaintiff, and with the attorneys representing all parties; that he had familiarized himself with the financial affairs of Hutton & Bourbonnais Company and obtained all information available with respect to that company's assets and liabilities; that he was convinced that there had been and was then no market for the stock owned by the Miller Estate, and that it would be necessary to liquidate this Company in order to realize the present value thereof; that as result of discussions with stockholders and other interested parties the guardian *ad litem* was instrumental in securing an offer for this stock $6,500 in cash, $6,500 in real estate conveyance, and $21,500 endorsed notes of the Company, and the proportionate share of the investment of Hutton & Bourbonnais Company in various local corporations. The guardian *ad litem* expressed the view that funds to be derived from the contemplated sale were presently needed for the education and maintenance of plaintiff, then about to enter college

The guardian *ad litem* incorporated in his answer the following recommendation: "After the most careful consideration of all the circumstances involved this defendant is convinced that it is to the best interest of the minor, J. T. Miller, Jr., that the offer for the purchase of the stock of the J. T. Miller Estate, as set forth in the amended petition, should be accepted and approved by the Court, and in reaching this conclusion this defendant has been influenced by the fact that the acceptance of said offer will enable the executor to close, with reasonable promptness, the administration of the estate and to set up the trust fund provided by the will of the minor's father and thereby carry out the purpose and intention of the testator to insure the existence of a fund sufficient to support, maintain and educate said minor, and secondly, this defendant believes that a liquidation of the Hutton & Bourbonnais Company, either voluntarily or by a receiver, would in all probability produce less money for the use of said minor than will be obtained by the acceptance of this offer." The adult defendants, the widow and legatees of the testator, who together owned more than 400 shares of this stock filed answer asking that the sale be made as proposed, and elected to sell their own shares on the same terms.

Judge Phillips, who was presiding at July Term, 1940, of Catawba Superior Court, had all the parties before him, and in his judgment set out his findings fully and, among other things, found that the shares of stock were not now marketable, that the trustee had repeatedly endeavored to sell them but was unable to secure an offer; that Hutton & Bourbonnais Company had made no profit since 1926, paid no dividend since 1930, and had a substantial deficit, and entered his conclusion as follows: "The Court, after careful inquiry and investigation, is of the opinion and finds that in order to carry out the purpose of the trust created by the testator, it is now advisable that the offer for the purchase of said stock be accepted and the executor and trustee be authorized to do and perform all things necessary for the consummation of said sale and purchase."

It also appeared that on the same day a similar judgment was rendered authorizing the trustees of the Hutton Estate to sell the shares of stock of Hutton & Bourbonnais Company belonging to that estate upon identical terms. All these facts are set forth in the exhibits which plaintiff has attached to his complaint. Thus it appears from the answer of the guardian *ad litem* and the findings of the court, incorporated in the complaint, that the charge that the judgment was rendered without information as to the value of the shares, and without knowledge of the alleged conflicting interests, is not borne out.

After examination of the complaint and of the judgment rolls attached thereto and made a part thereof, we conclude that insufficient facts are alleged to show extrinsic fraud in procuring the judgment rendered 10 July, 1940. It follows that the judgment would constitute a bar to an action to surcharge the executor's accounts on account of the sale of the shares of stock authorized and approved by that judgment.

Estoppel by judgment is a matter of defense and ordinarily must be pleaded, but this rule does not apply where all the facts necessary to constitute an estoppel are set out in the complaint for the purpose of attack. *Alston v. Connell,* 140 N.C. 485 (494), 53 S.E. 292; 120 A.L.R. 110n. Here the plaintiff in order to raise the question has inserted the judgment roll in his complaint and at the same time set out allegations attacking the validity of the judgment in the effort to have it declared void and of no effect. The defendant has moved to strike these allegations on the ground that the matters alleged have been determined by the judgment. Thus both parties have squarely presented the question for our decision whether the allegations sought to be stricken are sufficient for the purpose intended.

The case is here on motion to strike. The statute G.S. 1-153 authorizes the court to strike from a pleading irrelevant or redundant matter. *Rhodes v. Jones,* 232 N.C. 547, 61 S.E. 2d 725; *Poovey v. Hickory,* 210 N.C. 630, 188 S.E. 78. See 29 N. C. Law Review 1, where this statute

is discussed and pertinent decisions cited. And the right of the defendant to strike portions of a complaint which are insufficient to state a cause of action attempted to be set up is upheld in *Development Co. v. Bearden,* 227 N.C. 124, 41 S.E. 2d 85, upon the view that such allegations are in fact "irrelevant." If the complaint be wholly insufficient to state a cause of action, objection should be raised by demurrer; but when only a portion of the pleading or certain paragraphs are insufficient for the purpose for which they are inserted, relief may properly be had by motion to strike the objectionable paragraphs. *Thalhimer v. Abrams,* 232 N.C. 96, 59 S.E. 2d 358.

For the reasons stated we think the motion to strike from the complaint the portions designated should have been allowed, with right to the plaintiff to amend his complaint or file an amended complaint if so advised.

Reversed.