67 S.E.2d 362 (1951)
234 N.C. 309
MILLER
v.
FIRST NATIONAL BANK OF CATAWBA COUNTY.
No. 313.
Supreme Court of North Carolina.
October 31, 1951.
*366 Wade Lefler, Newton, Ratcliff, Vaughn, Hudson & Ferrell, Winston-Salem, for plaintiff appellee.
T. P. Pruitt, and Willis & Geitner, all of Hickory, for defendant appellant.
DEVIN, Chief Justice.
The defendant Bank appealed from the denial of its motion to strike certain paragraphs from the complaint filed in the *367 suit instituted by the plaintiff to surcharge the accounts of First Security Trust Company as executor and trustee of his father's estate. It is alleged the defendant Bank had absorbed by consolidation or merger the named Trust Company and assumed its liabilities. The gravamen of the charge in the complaint is negligence and mismanagement on the part of the Trust Company constituting a breach of trust, particularly in respect to the sale of 754 shares of stock of the Hutton & Bourbonnais Company which had been bequeathed in trust for the plaintiff under his father's will. Plaintiff, now of full age, seeks to recover damages for the loss alleged to have resulted. He alleges that the conduct of the Trust Company, for which the defendant Bank is now liable, under the circumstances set out at length, amounted to a constructive fraud upon his rights. In order to present the entire matter plaintiff has also set out in his complaint the fact that a judgment of the Superior Court was rendered in a proceeding instituted by the Trust Company as executor in which all interested persons were made parties, including the present plaintiff, approving the sale of the shares of stock now complained of. The judgment roll, including the pleadings, findings and judgment, is attached to the complaint and for the purpose of attack made part of it.
Plaintiff's allegation that the sale of the shares of stock complained of was approved by a judgment of the Superior Court in an adversary action in which the plaintiff here was party defendant and appeared by a guardian ad litem and answered, nothing else appearing, would raise a complete defense to his complaint on that ground, and his allegations of negligence and mismanagement in respect to the sale of this stock would not avail against a valid judgment rendered by a court having jurisdiction of the parties and of the subject matter.
It is alleged that the Superior Court which rendered the judgment was without jurisdiction of the subject matter, but we do not think the judgment is open to attack on this ground, as a court of equity has power to entertain a petition to sell land to pay debts, though personal property remains undisposed of, in order to preserve the personal property from being sacrificed, Settle v. Settle, 141 N.C. 553, 54 S.E. 445; King v. North Carolina R. Co., 184 N.C. 442, 115 S.E. 172. However, no action was taken on this petition, and some time later an amended petition was filed, which the present plaintiff's guardian ad litem and the adult defendants answered, presenting a proposal for the sale of this stock and asking the court's approval and authority to the executor to conclude the sale for the reasons assigned.
The facts set out would seem to indicate the court had jurisdiction both of the parties and of the subject matter. Hence mere irregularities in the rendition of the judgment would not justify an independent action to avoid its effect. Irregularities may be corrected by motion in the cause. McIntosh, sec. 652; Simms v. Sampson, 221 N.C. 379, 20 S.E.2d 554; Carter v. Rountree, 109 N.C. 29, 13 S.E. 716.
The remaining ground left the plaintiff upon which to maintain his action, in the face of the judgment which would otherwise bar his access to the relief demanded, is that of fraud. He alleges the judgment was void for constructive fraud on the part of the Trust Company which entered into the rendition of the judgment.
Constructive fraud differs from active fraud in that the intent to deceive is not an essential element, but it is nevertheless fraud though it rests upon presumption arising from breach of fiduciary obligation rather than deception intentionally practiced. 23 A.J. 756; Rhodes v. Jones, 232 N.C. 547, 61 S.E.2d 725; Hatcher v. Williams, 225 N.C. 112, 33 S.E.2d 617; City Bank Farmers Trust Co. v. Cannon, 291 N.Y. 125, 51 N.E.2d 674, 157 A.L.R. 1424; Ryan v. Plath, 18 Wash.2d 839, 140 P.2d 968.
Constructive fraud has been frequently defined as "a breach of duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive, to violate confidence, or to injure public interests. * * * Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud." 37 *368 C.J.S., Fraud, § 2, page 211; Greene v. Brown, 199 S.C. 218, 19 S.E.2d 114.
The plaintiff alleges in substance that the sale of the shares of stock by the trustee, to the injury of plaintiff, under the circumstances set out in the complaint, constituted a breach of the fiduciary obligation imposed upon the Trust Company in good conscience to guard the interests of the infant beneficiary, and was hence constructively fraudulent.
But if plaintiff's complaint be sufficient to allege constructive fraud, he is confronted by another hurdle.
In order to sustain a collateral attack on a judgment for fraud it is necessary that the allegations of the complaint set forth facts constituting extrinsic or collateral fraud in the procurement of the judgment. It is well settled that the fraud for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment. Horne v. Edwards, 215 N.C. 622, 3 S.E.2d 1; McCoy v. Justice, 199 N.C. 602, 155 S.E. 452; Mottu v. Davis, 153 N.C. 160, 69 S.E. 63; United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; Freeman on Judgments, sec. 1233. "Extrinsic or collateral fraud operates not upon matters pertaining to the judgment itself but relates to the manner in which it is procured." Freeman on Judgments, sec. 1233.
In McCoy v. Justice, supra [199 N.C. 602, 155 S.E. 455], Justice Adams quotes with approval from Freeman on Judgments: "`For judgments are impeachable for those frauds only which are extrinsic to the merits of the case, and by which the court has been imposed upon or misled into a false judgment. They are not impeachable for frauds relating to the merits between the parties. All mistakes and errors must be corrected from within by motion for a new trial, or to reopen the judgment, or by appeal.'" Where the fraud is extrinsic or collateral, operating without, the remedy also is without, and the judgment may be collaterally attacked or set aside by an independent action. McIntosh 745; Carter v. Rountree, 109 N.C. 29, 13 S.E 716.
To avoid a judgment on this ground there must be shown extrinsic fraud, or fraud collateral to the matters in issue and heard by the first court, and not fraud in the matter on which the judgment was rendered. United States v. Throckmorton, supra. "The fraud which warrants equity in interfering with such a solemn thing as a judgment must be such as is practiced in obtaining the judgment, and which prevents the losing party from having an adversary trial of the issue." Mottu v. Davis, supra [153 N.C. 160, 69 S.E. 64].
The question here is whether the fraud charged relates to inequitable conduct on the part of the trustee which prevented the court from considering the plaintiff's case, or whether the court was imposed upon to the extent that facts material to the present plaintiff's case and in his interest were concealed or were not presented. McLean v. McLean, 233 N.C. 139, 63 S.E.2d 138.
The plaintiff's position is that the allegations of his complaint considered in the light favorable for him are sufficient to make out a case of constructive fraud. He contends the facts alleged show that the Trust Company, executor and trustee under the will, in breach of its trust negligently failed in 1938 to sell a portion of the shares of stock referred to at a time when a price of $50 per share was obtainable, and that in the suit it instituted in 1939 it was seeking to extricate itself from the consequences of its mismanagement; that in the proceeding now attacked it occupied inconsistent positions, and that in consequence of interlocking directorates and close business associations among those who controlled the defendant Bank, its subsidiary the Trust Company, and the Hutton & Bourbonnais Company, the corporation whose stock was the subject of negotiation and sale, interests represented by the executor and trustee were conflicting, and that the trustee in breach of the trust did not act in the interest of the plaintiff who was then 18 years of age; that as result of negligence valuable shares of stock were sold for an inadequate price; that at the same time the sale of 700 shares of stock in *369 the same corporation were being negotiated and sold by the Hutton Estate of which the Trust Company was one of the executors and trustees; that some of the officers and directors of Hutton & Bourbonnais were also directors of the defendant Bank, and the Bank was a creditor of Hutton & Bourbonnais Company.
Plaintiff further alleged that no evidence was presented to the court which rendered the judgment in 1940 as to the true value of the shares of stock; that while judgments were rendered by the court in this case and the Hutton Estate case on the same day, the attention of the court was not called by the trustee to the conflict of interest among the parties in the purchase and sale of this stock. Plaintiff cites as authority for his position, among others: Graham v. Floyd, 214 N.C. 77, 197 S.E. 873; Hatcher v. Williams, 225 N.C. 112, 33 S.E.2d 617; McNinch v. American Trust Co., 183 N.C. 33, 110 S.E. 663; City Bank Farmers Trust Co. v. Cannon, 291 N.Y. 125, 51 N.E.2d 674, 157 A.L.R. 1424; City Bank Farmers Trust Co. v. Taylor, 76 R.I. 129, 69 A.2d 234; Ryan v. Plath, 18 Wash.2d 839, 140 P.2d 968; G.S. § 36-28.
On the other hand, the defendant's motion to strike as irrelevant the allegations in the complaint which relate to the sale of these shares of stock, was based on the ground that according to the complaint and the exhibits attached the sale was approved by a valid judgment of the Superior Court, and that any irregularities alleged are insufficient to justify a collateral attack on this judgment.
It appears from the complaint and the judgment rolls attached thereto that plaintiff's father died testate in 1935, and that at the date of the judgment referred to, July 10, 1940, there was no personal property, except the shares bequeathed in trust for the plaintiff, with which to pay the balance of the debts of the estate and to provide for the maintenance of plaintiff, testator's son; that it had been necessary to ask for orders of court authorizing the executor to borrow money to pay for the education of the plaintiff. In 1939 the executor instituted an action to sell real property for this purpose rather than sacrifice the shares of stock for which it was alleged there was no market. In that suit the court appointed as guardian ad litem of the present plaintiff L. P. McLendon, an experienced and reputable lawyer of the Guilford bar, who had no connection or association with any of the parties interested. The petition to sell land was not prosecuted, but in 1940, a year later, the executor filed an amended petition asking for authority to sell the shares of stock to the issuing corporation the Hutton & Bourbonnais Company upon the terms therein set out. The guardian ad litem filed an answer in which he set out that since his appointment as guardian ad litem he had personally attended meetings of the stockholders of Hutton & Bourbonnais Company and had repeatedly conferred with officials of the Trust Company, with the mother of the present plaintiff, and with the attorneys representing all parties; that he had familiarized himself with the financial affairs of Hutton & Bourbonnais Company and obtained all information available with respect to that company's assets and liabilities; that he was convinced that there had been and was then no market for the stock owned by the Miller Estate, and that it would be necessary to liquidate this Company in order to realize the present value thereof; that as result of discussions with stockholders and other interested parties the guardian ad litem was instrumental in securing an offer for this stock $6,500 in cash, $6,500 in real estate conveyance, and $21,500 endorsed notes of the Company, and the proportionate share of the investment of Hutton & Bourbonnais Company in various local corporations. The guardian ad litem expressed the view that funds to be derived from the contemplated sale were presently needed for the education and maintenance of plaintiff then about to enter college.
The guardian ad litem incorporated in his answer the following recommendation: "After the most careful consideration of all the circumstances involved this defendant is convinced that it is to the best interest of the minor, J. T. Miller, Jr., that the offer for the purchase of the stock of the J. T. Miller Estate, as set forth in the amended *370 petition, should be accepted and approved by the Court, and in reaching this conclusion this defendant has been influenced by the fact that the acceptance of said offer will enable the executor to close, with reasonable promptness, the administration of the estate and to set up the trust fund provided by the will of the minor's father and thereby carry out the purpose and intention of the testator to insure the existence of a fund sufficient to support, maintain and educate said minor, and secondly, this defendant believes that a liquidation of the Hutton & Bourbonnais Company, either voluntarily or by a receiver, would in all probability produce less money for the use of said minor than will be obtained by the acceptance of this offer." The adult defendants, the widow and legatees of the testator, who together owned more than 400 shares of this stock filed answer asking that the sale be made as proposed, and elected to sell their own shares on the same terms.
Judge Phillips, who was presiding at July Term 1940 of Catawba Superior Court, had all the parties before him, and in his judgment set out his findings fully and, among other things, found that the shares of stock were not now marketable, that the trustee had repeatedly endeavored to sell them but was unable to secure an offer; that Hutton & Bourbonnais Company had made no profit since 1926, paid no dividend since 1930, and had a substantial deficit, and entered his conclusion as follows: "The Court, after careful inquiry and investigation, is of the opinion and finds that in order to carry out the purpose of the trust created by the testator, it is now advisable that the offer for the purchase of said stock be accepted and the executor and trustee be authorized to do and perform all things necessary for the consummation of said sale and purchase."
It also appeared that on the same day a similar judgment was rendered authorizing the trustees of the Hutton Estate to sell the shares of stock of Hutton & Bourbonnais Company belonging to that estate upon identical terms. All these facts are set forth in the exhibits which plaintiff has attached to his complaint. Thus it appears from the answer of the guardian ad litem and the findings of the court, incorporated in the complaint, that the charge that the judgment was rendered without information as to the value of the shares, and without knowledge of the alleged conflicting interests, is not borne out.
After examination of the complaint and of the judgment rolls attached thereto and made a part thereof, we conclude that insufficient facts are alleged to show extrinsic fraud in procuring the judgment rendered July 10, 1940. It follows that the judgment would constitute a bar to an action to surcharge the executor's accounts on account of the sale of the shares of stock authorized and approved by that judgment.
Estoppel by judgment is a matter of defense and ordinarily must be pleaded, but this rule does not apply where all the facts necessary to constitute an estoppel are set out in the complaint for the purpose of attack. Alston v. Connell, 140 N.C. 485, 494, 53 S.E. 292; 120 A.L.R. 110n. Here the plaintiff in order to raise the question has inserted the judgment roll in his complaint and at the same time set out allegations attacking the validity of the judgment in the effort to have it declared void and of no effect. The defendant has moved to strike these allegations on the ground that the matters alleged have been determined by the judgment. Thus both parties have squarely presented the question for our decision whether the allegations sought to be stricken are sufficient for the purpose intended.
The case is here on motion to strike. The statute G.S. § 1-153 authorizes the court to strike from a pleading irrelevant or redundant matter. Rhodes v. Jones, 232 N.C. 547, 61 S.E.2d 725; Poovey v. City of Hickory, 210 N.C. 630, 188 S.E. 78. See 29 N.C. Law Review 1, where this statute is discussed and pertinent decisions cited. And the right of the defendant to strike portions of a complaint which are insufficient to state a cause of action attempted to be set up is upheld in Patuxent Development Co. v. Bearden, 227 N.C. 124, 41 S.E.2d 85, upon the view that such allegations are in fact "irrelevant." If the complaint be wholly insufficient to *371 state a cause of action, objection should be raised by demurrer; but when only a portion of the pleading or certain paragraphs are insufficient for the purpose for which they are inserted, relief may properly be had by motion to strike the objectionable paragraphs. Thalhimer, Inc., v. Abrams, 232 N.C. 96, 59 S.E.2d 358.
For the reasons stated we think the motion to strike from the complaint the portions designated should have been allowed, with right to the plaintiff to amend his complaint or file an amended complaint if so advised.
Reversed.