**David E. GEORGE, Plaintiff,**

v.

**Reece Nelson MCCLURE, Defendant.**

No. CIV.1:00–CV–00952.

United States District Court, M.D. North Carolina.

Feb. 10, 2003.

See, also, 2001 WL 823610.

Ellis B. Drew, III, Wells Jenkins Lucas & Jenkins, Winston-Salem, NC, for Plaintiff.

Amiel J. Rossabi, Forman Rossabi Black Marth Iddings & Slaughter, P.A., Greensboro, NC, Gregory Arthur Wendling, Greensboro, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

On September 22, 2000, Plaintiff David E. George filed this diversity action against Defendant Reece Nelson McClure alleging claims based on fraud, rescission, unjust enrichment, conversion, unfair and deceptive trade practices, breach of fiduciary duty, constructive trust, and accounting. This matter is currently before the court on Defendant's motion for summary judgment. For the following reasons, the court will grant Defendant's motion for summary judgment.

### FACTS

Because this matter is before the court on Defendant's motion for summary judgment, the facts will be viewed in the light most favorable to Plaintiff. Plaintiff and Defendant were partners in an interior design business, Reece N. McClure Interior Design. In 1992, Thomas Sandefur, Chief Executive Officer of Brown & Williamson Tobacco Company, consulted with Plaintiff and Defendant regarding a redesign and redecoration of the Brown & Williamson home headquarters in Louisville, Kentucky. The projected cost for the first phase of the project was $2,000,000.00. An initial deposit of $1,000,000.00 was received by Plaintiff on April 24, 1993, and was placed in Reece N. McClure Interior Design's account in Winston–Salem, North Carolina.

Plaintiff alleges that around this time Defendant formed a new corporation called Environmental Productions, Inc. Plaintiff claims that this corporation is a sham corporation established in part to defraud Plaintiff by serving as a receptacle for payments funneled from the Brown & Williamson job. Following Plaintiff's discovery of Defendant's corporation, the personal relationship between Plaintiff and Defendant began to deteriorate. Plaintiff claims that Defendant began siphoning partnership funds and became involved with Brian Peele, who allegedly participated in the scheme to defraud Plaintiff.

On February 25, 1994, as a result of the deterioration of Plaintiff and Defendant's personal and professional relationship, Plaintiff filed suit against Defendant and Peele in Forsyth County Superior Court. On November 3, 1994, Sandefur and his wife, Crawford Sandefur, filed affidavits in the state court action stating that the Brown & Williamson project had been terminated and that Environmental Productions had been hired to finish limited work. In November 1994, Defendant testified in a video deposition that the Brown & Williamson project had been cancelled.

On March 30 and 31, 1995, Plaintiff, Defendant, and Peele met for a mediated settlement conference. During the settlement conference, Plaintiff contends that Defendant and his attorney made misrepresentations to him. Specifically, Plaintiff alleges that Defendant and his attorney represented: (1) that the Brown & Williamson job had been cancelled; (2) that Environmental Productions, Inc., was going to complete only a small amount of work with no profit being realized; (3) that after the small amount of work left for

Brown & Williamson was completed, there would be no further work and no future economic opportunity with the Brown & Williamson project; (4) that Defendant had no money, and that the $1,000,000.00 deposit for the Brown & Williamson project and over $1,000,000.00 of accumulated shared assets had been spent; (5) that Plaintiff should immediately settle for a small amount because that is all Defendant could pay; that if Plaintiff did not settle at this time there may be no money in the future, and that Plaintiff might even have to help refund monies paid by Brown & Williamson; and (6) that the mediated settlement agreement had to state that no partnership ever existed for Defendant's tax purposes only.

Plaintiff claims that he believed these representations at the time they were made, in part because he had witnessed lavish spending by Defendant and Peele. Accordingly, Plaintiff and Defendant entered into a mediated settlement agreement. Plaintiff received property and cash totaling approximately $470,000.00. On June 20, 1995, Plaintiff and Defendant filed a voluntary dismissal with prejudice in the state court action.

Plaintiff now claims that the Sandefurs' affidavits were false and that Defendant's attorney in the state action knew that he was procuring false affidavits. Plaintiff further claims that he relied on these misrepresentations when he entered into the settlement agreement. Plaintiff contends that Defendant's statements, as well as those made by the Sandefurs and Defendant's attorney, were false and that the Brown & Williamson project had not been cancelled and Defendant received millions of dollars in profits from that job.

Plaintiff claims that he learned the falsity of Defendant's representations and the extent of Defendant's scheme to defraud him through the assistance of Peele, who

Plaintiff alleged in the state court action participated in the scheme to defraud him. Like Plaintiff's relationship with Defendant, Peele's relationship with Defendant also resulted in a lawsuit. During the discovery phase of Peele's lawsuit against Defendant, Peele obtained financial documents allegedly showing that Defendant had received millions of dollars from Brown & Williamson. Defendant, however, testified in his deposition for Plaintiff's state action that the Brown & Williamson project had been cancelled. Peele also provided to Plaintiff a sworn statement detailing the fraudulent scheme in which Defendant enlisted Peele to participate.

As a result of Plaintiff's discoveries regarding the alleged false representations made at the settlement conference upon which Plaintiff allegedly relied in entering the settlement, Plaintiff filed the present action.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can

simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

Plaintiff's complaint seeks to have the settlement agreement between the parties rescinded due to the alleged misrepresentations by Defendant and Defendant's attorney during the settlement negotiations. In addition to his request that the court rescind the parties' settlement agreement, Plaintiff also seeks monetary damages due to Defendant's alleged misrepresentations. Plaintiff contends that by making misrepresentations during the settlement conference, Defendant "committed a fraud upon the court" and deprived Plaintiff of the "opportunity to present his case to the court and to fully participate in the adversary proceeding." (Pl.'s Resp. Br. Opp'n Def.'s Mot. Summ. J. at 20.)

■ All federal courts are obligated by the full faith and credit statute to afford valid state court judgments full faith and credit. *See* 28 U.S.C. § 1738 (1994). "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgment emerged." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). This mandate requires that a federal court, in evaluating the preclusive effect of a state court judgment, "refer to the preclusion laws of the State in which judgment was rendered." *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84

L.Ed.2d 274 (1985). Accordingly, the court, sitting in diversity jurisdiction, must look to North Carolina law in determining the preclusive effect of the parties' settlement agreement and dismissal with prejudice.

■ Under North Carolina law, "a final judgment, rendered on the merits by a court of competent jurisdiction, is conclusive as to the issues raised therein with respect to the parties ... and constitutes a bar to all subsequent actions involving the same issues and parties." *Kabatnik v. Westminster Co.*, 63 N.C.App. 708, 711–12, 306 S.E.2d 513, 515 (1983). For *res judicata* to apply, there must have been a final adjudication on the merits. *Id.* at 712, 306 S.E.2d at 515. "A dismissal with prejudice is an adjudication on the merits and has res judicata implications." *Caswell Realty Assocs. I, L.P. v. Andrews Co., Inc.*, 128 N.C.App. 716, 720, 496 S.E.2d 607, 610 (1998) (*Caswell II*); *see also Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir.1987) (stating that "a voluntary dismissal with prejudice is a valid, final judgment on the merits"). A final judgment with *res judicata* implications, however, is not necessarily immune from attack.

■ An independent challenge to a final judgment can be brought to set aside a judgment that is procured by extrinsic fraud or "fraud upon the court." "It is well settled in [North Carolina] ... that in order to sustain a collateral attack on a judgment for fraud [upon the court] it is necessary that ... the complaint set forth facts constituting extrinsic or collateral fraud in the procurement of the judgment, and not merely intrinsic fraud ...." *Scott v. Farmers Coop. Exch., Inc.*, 274 N.C. 179, 182, 161 S.E.2d 473, 476 (1968). " '[J]udgments are impeachable for those frauds only which are extrinsic to the merits of the case.' " *Id.* at 183, 161 S.E.2d at 476 (quoting *McCoy v. Justice*, 199 N.C.

602, 155 S.E. 452, 455 (1930)). The North Carolina courts have stated:

> Fraud is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court. If an unsuccessful party to an action has been prevented from fully participating therein there has been no true adversary proceeding, and the judgment is open to attack at any time. A party who has been given proper notice of an action, however, and who has not been prevented from full participation, has had an opportunity to present his [c]ase to the court and to protect himself from any fraud attempted by his adversary. Fraud perpetrated under such circumstances is intrinsic . . . .

*Stokley v. Stokley,* 30 N.C.App. 351, 354–55, 227 S.E.2d 131, 134 (1976).

As part of Plaintiff and Defendant's settlement of the state cause of action, the parties agreed to file a voluntary dismissal with prejudice, which is a final adjudication with *res judicata* implications. Thus, the suit at bar is a collateral attack on a final judgment. Such a collateral attack can be maintained only on the basis of extrinsic fraud. Plaintiff's complaint in this proceeding, however, does not allege extrinsic fraud. He had notice of all proceedings and actively participated in all aspects of the litigation. Rather, Plaintiff's complaint alleges intrinsic fraud.

Plaintiff contends that the settlement agreement was obtained through the use of false statements concerning the financial assets of the partnership and the nonexistence of the Brown & Williamson project. These allegations directly relate to the merits of Plaintiff's claims against Defendant in the state cause of action, in which Plaintiff alleged that Defendant was diverting partnership funds from the partnership for his own use and that Defendant was interfering with and usurping the economic opportunities of the partnership. Accordingly, because the fraud complained of in this proceeding directly relates to the underlying merits of Plaintiff's claims in the state cause of action, such fraud is intrinsic and not subject to collateral attack. *See Caswell Realty Assocs. I, L.P. v. Andrews Co., Inc.,* 121 N.C.App. 483, 466 S.E.2d 310 (1996) (*Caswell I* ) (holding that fraudulent representations made during settlement negotiations constituted intrinsic fraud and could not be attacked in an independent action); *Textile Fabricators, Inc. v. C.R.C. Indus., Inc.,* 43 N.C.App. 530, 259 S.E.2d 570 (1979) (stating that independent challenge in state court to a final judgment in federal court could not be maintained because the fraudulent testimony constituted intrinsic fraud); *Stokley,* 30 N.C.App. at 351, 227 S.E.2d at 131 (denying the plaintiff the right to challenge divorce decree on basis of perjured testimony and false evidence because they constituted intrinsic fraud and statutory time for filing motion to vacate judgment had run).

Nevertheless, Plaintiff contends that Defendant's misrepresentations constituted fraud upon the court due to the fact that the misrepresentations were made during the court-ordered mediation. While the mediation was court ordered, the settlement was not. Plaintiff was not required to settle and was entitled to proceed with his suit. Plaintiff, however, elected to settle and with that election voluntarily accepted a certain level of risk that the facts as represented by Defendant may not be accurate. Such risk is inherent in every decision to settle prior to full discovery and does not constitute fraud upon the court.

Plaintiff further contends that he was denied the opportunity to present his case and to participate fully in the pro-

ceedings because of Defendant's efforts to prevent discovery of all the facts. Even if this contention is correct, it does not constitute fraud upon the court. If Defendant prevented Plaintiff from discovering all the relevant facts, Plaintiff's recourse was to refuse settlement. Through the normal adversary process, Plaintiff could have gathered all the relevant information and could have exposed Defendant's representations as false, but by settling without full disclosure Plaintiff made a decision to forego this opportunity. Therefore, Plaintiff cannot now seek relief from that decision by characterizing Defendant's fraud as extrinsic.

To accept Plaintiff's position that Defendant's alleged fraud constituted extrinsic fraud would require the court to ignore guiding North Carolina case law. The North Carolina Court of Appeals decision in *Caswell I*, 121 N.C.App. at 483, 466 S.E.2d at 310, is virtually on all fours with the case at bar. The action in *Caswell I* was one of three lawsuits arising from an alleged breach of two commercial leases. The facts surrounding the series of lawsuits are fully set out in *Caswell II*, 128 N.C.App. at 716, 496 S.E.2d at 607. Prior to trial the plaintiff and the defendant settled the suit and consequently filed a voluntary dismissal with prejudice. *Id.* at 717, 496 S.E.2d at 609. A few months later, the plaintiff filed a motion seeking to have the judgment vacated alleging that the defendant had misrepresented its financial status during settlement negotiations. *Id.* at 718, 496 S.E.2d at 609. Prior to a hearing on the motion, the plaintiff withdrew its motion and filed an independent action attacking the settlement agreement and dismissal with prejudice on the basis of fraud, negligent misrepresentation, and unfair and deceptive trade practices. *Id.*

In affirming the trial court's grant of the defendant's motion for summary judgment, the court of appeals determined that "[t]he fraud of which plaintiff complains allegedly took place during settlement negotiations between the parties and is intrinsic." *Caswell I*, 121 N.C.App. at 486, 466 S.E.2d at 312. As such, the court held that the plaintiff could not attack the fraud through an independent action. *Id.*

As an alternative to setting aside the settlement agreement, the plaintiff sought damages premised upon the defendant's fraudulent conduct. *Id.* Again, the court rejected the plaintiff's claim, stating that "[b]ecause the prior settlement cannot be attacked collaterally through this independent action, it is still wholly in effect. It is settled in this jurisdiction ... that plaintiff cannot recover damages for fraud 'unless and until the judgment denying him the right to recover [is] vacated.'" *Id.* (quoting *Gillikin v. Springle*, 254 N.C. 240, 244, 118 S.E.2d 611, 614 (1961)).

As in *Caswell I*, Plaintiff and Defendant in the case at bar executed a settlement agreement and agreed to a voluntary dismissal with prejudice. Furthermore, like *Caswell I*, the fraud complained of occurred during settlement negotiations and concerned the merits of the underlying dispute. Accordingly, such fraudulent statements constitute intrinsic fraud that cannot be attacked through an independent proceeding.

Plaintiff seeks remedies similar to those the plaintiff sought in *Caswell I*. First, Plaintiff seeks to have this court rescind the settlement agreement and the dismissal with prejudice. As already discussed, however, an attack on the agreement and dismissal cannot be maintained in an independent action. Second, Plaintiff alleges he suffered damages as a result of the fraudulent statements made during the settlement negotiations. This theory of

recovery, however, was explicitly rejected by the *Caswell I* court. *Id.* Only if the prior settlement is vacated can Plaintiff recover damages caused by Defendant's alleged fraud. Because this court cannot disturb that settlement, Plaintiff cannot seek a remedy in the form of monetary damages.

## CONCLUSION

The fraud complained of in this proceeding is intrinsic fraud. "The established rule in [North Carolina] is that where a judgment has been entered relief from that judgment is not available in an independent action upon facts which amount to intrinsic fraud." *Textile Fabricators*, 43 N.C.App. at 531, 259 S.E.2d at 571. Thus, Plaintiff may challenge the settlement agreement and dismissal with prejudice only in a motion filed with the state court. Plaintiff, however, has challenged the state court judgment through an independent action, which may be brought to challenge only extrinsic fraud, or fraud upon the court. Plaintiff's complaint contains no allegations to support the proposition that Defendant's misrepresentations constituted extrinsic fraud. Accordingly, Plaintiff is barred by the principles of *res judicata* from maintaining the current cause of action. Therefore, the court will grant Defendant's motion for summary judgment.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.